**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Joseph Craig ECKROTE, Appellant.**

Superior Court of Pennsylvania.

Submitted July 26, 2010.

Filed Oct. 29, 2010.

Robert M. Buttner, Scranton, for appellant.

Jacqueline M. Carroll, Assistant District Attorney, Wilkes–Barre, for Commonwealth, appellee.

BEFORE: PANELLA, OTT and COLVILLE *, JJ.

OPINION BY PANELLA, J.:

Appellant, Joseph Craig Eckrote, appeals from the judgment of sentence entered on May 21, 2009, by the Honorable Joseph M. Augello, Court of Common Pleas of Luzerne County. After careful review, we affirm.

The record in the case *sub judice* reveals that on May 17, 2008, a final protection from abuse (PFA) order was in effect when C.B., the victim, arrived home from work at approximately 9:00 a.m. Unbeknownst to C.B., Eckrote was hiding under the deck. As soon as C.B. shut the gate

* Retired Senior Judge assigned to the Superior Court.

door, he charged "at [her] like a football player" demanding that C.B. "get in the f-ing car," after which C.B. yelled "no I'm not going with you." *See* N.T. Trial, 1/6/09, at 45–46. According to C.B., Eckrote wrapped both of his arms around her body and grabbed the keys to her vehicle out of her hands. *Id.* at 46. Eckrote then escorted C.B. over to the vehicle and rammed her into the driver's side of the vehicle while C.B. yelled and beeped the horn with her elbow. *Id.* at 46–47. C.B. unsuccessfully attempted to stab Eckrote with a knife she kept in the vehicle for her protection. *Id.* Eckrote then entered the vehicle, and again proceeded to push C.B. to the point "where [her] feet and legs were just, like, over the console." *Id.* C.B. recounted that her feet and legs were wedged "where the gas and brake" pedals were located and her "upper body was on the seat of the passenger side." *Id.* at 47–48.

Eckrote then drove C.B. in the vehicle to an undisclosed location in a wooded area. During the ride, Eckrote made several pleas to C.B. to drop the PFA against him, which C.B. declined. *Id.* at 52. Eckrote repeatedly told C.B. that he was going to kill himself. *Id.* At some point, the vehicle became stuck in the mud, after which Eckrote told C.B. that "he wanted to have sex" with her. C.B. adamantly responded "no." *Id.* at 54. Eckrote again stated he was going to kill himself. *Id.* at 54. Eckrote then ordered C.B. to remove her pants. She reluctantly complied, after which he came over into the passenger seat, pushed the seat all the way back, and climbed on top of C.B. *Id.* at 54–55. According to C.B., Eckrote did not remove his jeans totally; he unzipped them, and proceeded to penetrate her vaginal area with his penis. *Id.* at 55–56. C.B. tried to push Eckrote away with her hands, however, she was unsuccessful, and he completed the sexual assault. *Id.* at 56. Eckrote

then instructed C.B. to get out of the vehicle, after which she was able to dial 911 for help. *Id.* at 57.

C.B. was transported to the hospital for a medical examination. As a result of being wedged in the vehicle, C.B. sustained bruises on her legs. *Id.* at 58. The rape kit conducted at the hospital subsequently revealed the presence of semen in C.B.'s underpants. *Id.* at 104–105. Additionally, seminal fluid was discovered on the vaginal swabs taken at the hospital. *Id.* at 106. According to Trooper Gerald Sachney, the medical evidence was consistent with C.B.'s account of what had transpired. *Id.* at 107.

Following a jury trial on January 6, 2009, Eckrote was found guilty of kidnapping, 18 Pa. Cons.Stat.Ann. § 2901(a)(2), rape, 18 Pa. Cons.Stat.Ann. § 3121(a)(1), robbery of a motor vehicle, 18 Pa. Cons. Stat.Ann. § 3702(a) and simple assault, 18 Pa.Cons.Stat.Ann. § 2701(a)(3). Subsequent thereto, on May 21, 2009, the trial court sentenced Eckrote to an aggregate period of 14 to 28 years' imprisonment, followed by three years of probation. Post-sentence motions were denied by order dated May 29, 2009. This timely appeal followed.

On appeal, Eckrote challenges the sufficiency of the evidence to support his convictions for simple assault, rape by forcible compulsion, and kidnapping. Appellant's Brief, at 6.

■ In reviewing sufficiency of evidence claims, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all the elements of the offense. *Commonwealth v. Bullick,* 830 A.2d 998, 1000 (Pa.Super.2003). Additionally, to sustain a conviction, the facts and circumstances

which the Commonwealth must prove, must be such that every essential element of the crime is established beyond a reasonable doubt. *Commonwealth v. Hargrave*, 745 A.2d 20, 22 (Pa.Super.2000), *appeal denied*, 563 Pa. 683, 760 A.2d 851 (2000). Admittedly, guilt must be based on facts and conditions proved, and not on suspicion or surmise. *Commonwealth v. Swerdlow*, 431 Pa.Super. 453, 636 A.2d 1173 (1994). However, entirely circumstantial evidence is sufficient so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. *See id.; see also Commonwealth v. Chmiel*, 536 Pa. 244, 247, 639 A.2d 9, 11 (1994).

Any doubts regarding a defendant's guilt may be resolved by the factfinder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *See Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super.2001), *appeal denied*, 569 Pa. 716, 806 A.2d 858 (2002). The fact finder is free to believe all, part, or none of the evidence presented at trial. *See Commonwealth v. Nicotra*, 425 Pa.Super. 600, 625 A.2d 1259, 1261 (1993).

We begin by reviewing Eckrote's first argument on appeal wherein he contends that the evidence presented by the Commonwealth was insufficient to convict him of simple assault. We disagree. Section 2701(a) of the Crimes Code provides that a person is guilty of assault if he "attempts by physical menace to put another in fear of imminent serious bodily injury." 18 Pa.Cons.Stat.Ann. § 2701(a)(3).

"Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301. The Commonwealth need not establish that the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury. This intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury. *Commonwealth v. Polston*, 420 Pa.Super. 233, 616 A.2d 669 (1992), *alloc. den.*, 534 Pa. 638, 626 A.2d 1157 (1993).

*Commonwealth v. Richardson*, 431 Pa.Super. 496, 636 A.2d 1195, 1196 (1994).

Here, Eckrote intentionally hid under the deck to C.B.'s residence waiting to prey upon her. Upon hearing C.B. shut the outside gate, Eckrote "charg[ed] at [her] like a football player," grabbed her, and with both of his arms secured around C.B., snatched the cars keys right out of her hand. *See* N.T. Trial, 1/6/09, at 45. Then, holding her by one arm, Eckrote unlatched the gate and ordered C.B. to "get in the f-ing car." *Id.* at 46. C.B. yelled "I'm not going with you" as she was still in fear of Eckrote from an earlier incident which had a occurred on May 3, 2008, when Eckrote had "hit his fist against the side of [C.B.'s] face and said don't you even think about going to work tonight because you will be floating in the river," which resulted in the aforementioned PFA order. *Id.* at 42, 46.

Eckrote then escorted C.B. over to the vehicle and physically pushed her into the driver's side of the vehicle, ramming her legs under the steering wheel area and wedging her upper body over the center console into the passenger side. *Id.* at 47. C.B. attempted to get away from Eckrote by yelling and beeping the horn with her elbow. She even went so far as to attempt to stab Eckrote with a knife she kept in the vehicle for her protection. *Id.* at 47.

Based upon this evidence presented at the time of trial, the jury could reasonably infer that the natural effect of Eckrote's

conduct in charging at, physically restraining and shoving C.B. into the vehicle was to create in her a fear of imminent serious bodily injury, particularly in light of his previous threats resulting in the issuance of a PFA. Moreover, the record indicates that C.B. sustained bodily injury, *i.e.*, bruises to her legs as a result of the attack. *Id.* at 58. Thus, it is evident the jury acted properly in finding that Eckrote possessed the requisite intent to support his simple assault conviction.

■ Next, we address Eckrote's challenge to the sufficiency of the evidence to support the conviction of rape by forcible compulsion. Pursuant to 18 PA.CONS.STAT. ANN. § 3121(a)(1), a person commits the crime of rape, a felony of the first degree, when the person engages in sexual intercourse with a complainant by forcible compulsion. Here, Eckrote concedes that he engaged in sexual intercourse with C.B.; however, he contends that the Commonwealth failed to establish any threat or forcible compulsion. *See* Appellant's Brief, at 15. We disagree.

■ It is well-established that in order to prove the "forcible compulsion" component, the Commonwealth must establish, beyond a reasonable doubt, that the defendant "used either physical force, a threat of physical force, or psychological coercion, since the mere showing of a lack of consent does not support a conviction for rape ... by forcible compulsion." *Commonwealth v. Brown*, 556 Pa. 131, 136, 727 A.2d 541, 544 (1999). In *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986), our Supreme Court stated that forcible compulsion includes "not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will." *Rhodes*, 510 Pa. at 555, 510 A.2d at 1226. Further, the degree of force required to

constitute rape is relative and depends on the facts and particular circumstances of a given case. *Commonwealth v. Ruppert*, 397 Pa.Super. 132, 579 A.2d 966, 968 (1990), *appeal denied*, 527 Pa. 593, 588 A.2d 914 (1991). *See* PENNSYLVANIA BENCHBOOK ON CRIMES OF SEXUAL VIOLENCE, Ch. 2, pg. 27 (2d Edition 2009).

Here, the evidence viewed in the light most favorable to the Commonwealth overwhelmingly establishes that the act of sexual intercourse was performed by forcible compulsion. Eckrote drove C.B. unwillingly to an undisclosed location and then told her he wanted to have sex with her. *See* N.T., Trial, 1/6/09, at 54. After C.B. adamantly told Eckrote "no", he stated he wanted to kill himself and subsequently ordered her to remove her pants. *Id.* Eckrote then jumped over into the passenger side of the vehicle, pushed the seat back as far as it would go and climbed on top of C.B. *Id.* Eckrote unzipped his jeans and began penetrating C.B.'s vaginal area. *Id.* at 54–55. According to C.B., she attempted to push Eckrote off of her with her hands; however, Eckrote would not get off of her until he finished the sexual assault. *Id.* at 56.

Accordingly, it is evident based upon the totality of the circumstances that Eckrote used both psychological and physical force to compel C.B. to engage in sexual intercourse with him against her will. Thus, the forcible compulsion element of § 3121(a)(1) was clearly satisfied.

■ Lastly, Eckrote challenges the sufficiency of the evidence relating to his conviction for kidnapping, 18 PA.CONS.STAT. ANN. § 2901(a)(2). Specifically, Eckrote argues that he did not possess the requisite intent to facilitate a felony. *See* Appellant's Brief, at 23. Again, we disagree.

Kidnapping is defined, in pertinent part, by the Crimes Code as follows:

### § 2901. Kidnapping

(a) **Offense defined.**—A person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:

. . .

(2) To facilitate commission of any felony or flight thereafter.

(b) **Grading.**—Kidnapping is a felony of the first degree. A removal or confinement is unlawful within the meaning of this section if it is accomplished by force, threat or deception . . .

18 PA.CONS.STAT.ANN. § 2901. "The kidnapping statute is not designed to criminalize every sort of incidental transportation or detention which may take place during the commission of another crime." *Commonwealth v. Mitchell*, 883 A.2d 1096, 1109 (Pa.Super.2005), *appeal denied*, 587 Pa. 688, 897 A.2d 454 (2006). "Such trivial movements of the victim generally do not substantially increase the risk of harm to the victim." *Id.* Therefore, to successfully prosecute the crime of kidnapping under this section, the Commonwealth must establish Eckrote kidnapped his victim *with the intent* to facilitate the commission of a felony. *Commonwealth v. King*, 786 A.2d 993, 994 (Pa.Super.2001), *appeal denied*, 571 Pa. 704, 812 A.2d 1228 (2002).

Here, the evidence established that Eckrote attacked C.B., a woman he had previously threatened to "float in the river," forcibly rammed her into a vehicle while she yelled "I'm not going with you," and drove away. *See* N.T. Trial, 1/6/09, at 42, 46 and 54. While in the vehicle, Eckrote repeatedly mentioned that he was going to kill himself and that he wanted to have sex with C.B. one last time. *Id.* at 52, 54. Eckrote then drove to an undisclosed location down by the river, climbed onto C.B., and raped her. *Id.* at 56. After the presentation of this evidence, the jury was free to conclude that Eckrote possessed the requisite intent to facilitate the commission of a felony, rape, when he preyed upon C.B., physically forced her into the vehicle, and transported her to the river.

Accordingly after viewing all of the evidence presented at trial in the light most favorable to the Commonwealth, we find the evidence sufficient to sustain all of Eckrote's convictions.

Judgment of sentence affirmed. Jurisdiction relinquished.