**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT ENDRIKAT | |
| Appellant | No. 1839 EDA 2014 |

Appeal from the Judgment of Sentence March 14, 2014
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000505-2012

BEFORE: GANTMAN, P.J., STABILE, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.: **FILED MAY 05, 2015**

Appellant, Robert Endrikat, appeals from the judgment of sentence entered in the Monroe County Court of Common Pleas, following Appellant's jury trial convictions of involuntary deviate sexual intercourse ("IDSI")—forcible compulsion, unlawful contact with a minor, corruption of minors, sexual assault, indecent assault—without consent, and indecent assault—forcible compulsion.[1] We affirm.

The trial court's opinion sets forth the relevant facts and procedural history of this case as follows:

---

[1] 18 Pa.C.S.A. §§ 3123(a)(1), 6318(a)(1), 6301(a)(1)(ii), 3124.1, 3126(a)(1), and 3126(a)(2), respectively.

---

*Retired Senior Judge assigned to the Superior Court.

On May 21, 2012, the Commonwealth filed the Information charging [Appellant] with Rape by Forcible Compulsion, [IDSI], Unlawful Contact with a Minor, Sexual Assault, Corruption of Minors and Indecent Assault.

On January 15, 2013, [Appellant] filed an Omnibus Motion challenging the *prima facie* case. On March 21, 2013, [the court] held a hearing on the Omnibus Motion. On June 6, 2013, [the court] issued an opinion and order denying [Appellant's] Omnibus Motion.

On August 20, 2013, after a trial by jury, [Appellant] was convicted of all charges with the exception of Rape by Forcible Compulsion. Trial counsel, an attorney with the Public Defender's Office, then filed a petition for withdrawal after stating that relations with [Appellant] had broken down. On November 6, 2013, [the] [c]ourt allowed counsel to withdraw and appointed [new counsel] to act as counsel for [Appellant].

On December 9, 2013, [the court] granted [Appellant's] Motion for Transcripts.

On March 14, 2014, [the court] sentenced [Appellant] to a term of six years to twelve years on each of the charges of [IDSI], Unlawful Contact, and Corruption of Minors. All sentences were to run concurrently. [The court] also found that the charges of Sexual Assault, Indecent Assault without Consent and Indecent Assault by Forcible Compulsion merged with [IDSI] for sentencing purposes. Therefore, [the court] imposed no additional sentence on those charges.

On March 24, 2014, [Appellant] filed the Post-Sentence Motions. The Commonwealth also filed its own Motion for Reconsideration of sentence.[2]

---

[2] The Commonwealth complained Appellant's sentence was too lenient and sought imposition of consecutive terms of incarceration in the aggravated range of the sentencing guidelines.

On May 23, 2014, [the court] held a hearing on the [post-sentence] motions and the parties filed briefs. …

(Post-Sentence Motion Opinion, filed June 4, 2014, at 1-2). The court subsequently denied both Appellant's and the Commonwealth's post-sentence motions on June 4, 2014. On June 24, 2014, Appellant timely filed a notice of appeal. The court ordered Appellant on July 10, 2014, to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on July 31, 2014.

Appellant raises the following issues for our review:

WHETHER IT WAS AN ABUSE OF DISCRETION TO DENY [APPELLANT'S] MOTION FOR MISTRIAL AFTER THE ALLEGED VICTIM'S OUTBURST?

WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE VERDICT WHERE THERE WAS NO EVIDENCE OF FORCIBLE COMPULSION, THREAT OF FORCIBLE COMPULSION, OR THAT THE ALLEGED VICTIM WAS UNCONSCIOUS OR MENTALLY DEFICIENT AND INCAPABLE OF CONSENT.

WHETHER THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE BASED ON THE CONFLICTING TESTIMONY OF THE ALLEGED VICTIM, AND THE LACK OF EVIDENCE OF FORCIBLE COMPULSION OR LACK OF CONSENT.

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY RELYING ON AGGRAVATING CIRCUMSTANCES THAT ARE ENCOMPASSED IN THE ELEMENTS OF THE OFFENSES AND TAKEN INTO CONSIDERATION BY THE OFFENSE GRAVITY AND STATUTORY CLASSIFICATIONS OF THE CRIME.

(Appellant's Brief at 7).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Stephen M.

Higgins, we conclude Appellant's issues one through three merit no relief. The trial court's opinion comprehensively discusses and properly disposes of the questions presented. (*See* Post-Sentence Motion Opinion at 7-15) (finding: **(1)** court issued curative instruction to jury to disregard victim's outbursts and conduct concerning anger towards Appellant; court reiterated curative instruction after closing arguments and told jury not to allow emotion to prejudice determination of facts; presumption exists that jury followed court's instructions; outburst did not unfairly prejudice Appellant, because jury already knew victim was angry with Appellant; likewise, Appellant made no effort to explain how victim's outburst unduly prejudiced Appellant; Appellant's failure to raise at trial or in post-sentence motion challenge to victim's characterization of Appellant's behavior prevented court from considering prejudice in this circumstance as basis for mistrial; **(2)** victim's initial statement that "Billy" raped victim does not indicate mistaken identity because Commonwealth's DNA expert testified that swabs of victim's penis revealed twenty-three-trillion-to-one chance that Appellant's DNA was present in form of saliva, victim identified Appellant as rapist, victim's first meeting of Appellant on day of incident could explain why victim used wrong name to identify Appellant as "Billy" instead of "Bob"; Appellant's claim that another individual named "Billy" raped victim lacks any support; jury could reasonably believe victim's representations and determine Appellant was properly identified as rapist; Appellant cites no authority to support claim

that expert testimony was necessary, nor does he specify what required expert testimony; Appellant did not raise objection at trial regarding lack of expert testimony; evidence of victim's "mental deficiency" was not present in case, as Commonwealth did not proceed under theory that victim was intellectually disabled; evidence of victim's "emotional deficiency" was relevant factor in considering whether victim suffered psychological forcible compulsion; expert evidence of victim's "emotional deficiency" was unnecessary because jury learned victim was adjudicated delinquent, victim testified to emotional instability due to anger issues, and victim demonstrated emotional difficulties at trial by breaking down on stand, refusing to testify, and yelling at Appellant; several factors supported jury's guilty verdict, including: Appellant was in his fifties and victim was only sixteen years old, Appellant was larger than victim, Appellant deceived victim by representing to his mother that Appellant mentored youth and was trained in therapeutic methods, Appellant isolated victim by bringing him to Appellant's home at night in rural setting with which victim was unfamiliar, Appellant purported to have authority by telling victim that Appellant knew of therapy for dealing with anger, Appellant used his legs to pin victim's arms during one of massages, Appellant grabbed victim's penis without informing victim or asking for his consent, Appellant continued with charade that massages were medical treatment even after Appellant asked victim if he wanted more and victim replied "no," victim looked for opportunity to

escape and ran to neighbor's home without shoes, victim began crying when he reached neighbor's home and indicated he had been raped, Appellant was observed near neighbor's home looking for victim with flashlight, Appellant left in his car and was stopped by state police, Appellant's DNA was found on victim's penis corroborating victim's account of events, and victim's mother called Appellant three times to speak with victim, but each time Appellant represented that victim was unavailable for various reasons; victim's age, lack of judgment, and emotional vulnerability made him prime target for Appellant and allowed Appellant to manipulate victim; evidence at trial was sufficient to find forcible compulsion; **(3)** verdict was not against weight of evidence; evidence that forcible compulsion was largely non-physical, victim did not fight Appellant, and victim voluntarily complied with Appellant's instructions were explained by surrounding circumstances, which allowed jury to determine reasonably that victim was forcibly compelled; all evidence in support of sufficiency indicates Appellant is not entitled to relief). The record supports the trial court's decision to deny relief on these issues. Therefore, we see no reason to disturb it. Accordingly, we affirm Appellant's issues one through three on the basis of the trial court's opinion.

In his final issue, Appellant argues the aggravating circumstances of Appellant being in a position of trust, his seeking to take advantage of the young victim to assault him sexually, and the victim's suffering after the sexual assault occurred, were improperly considered in the imposition of

Appellant's sentence. Appellant contends the court already considered these circumstances in the elements of the offenses, the offense gravity score, and the statutory classifications of the crimes. Specifically, Appellant maintains his position of trust was considered in determining the sufficiency of the evidence for forcible compulsion, the victim's youth was encompassed in the examination of the evidence for unlawful contact with a minor and corruption of a minor, and the victim's suffering was accounted for when the court took the effect of the crime on the victim into consideration for the classification of Appellant's offenses and his offense gravity score. Appellant concludes this Court should vacate the judgment of sentence and remand for further proceedings. Appellant challenges the discretionary aspects of his sentence. *Commonwealth v. Anderson*, 830 A.2d 1013 (Pa.Super. 2003) (stating claim that court considered improper factors at sentencing refers to discretionary aspects of sentencing).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Sierra*, 752 A.2d 910 (Pa.Super. 2000). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *See* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *See* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the

- 7 -

Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). The concise statement must indicate "where the sentence falls in relation to the sentencing guidelines and what particular provision of the code it violates." *Commonwealth v. Kiesel*, 854 A.2d 530, 532 (Pa.Super. 2004) (quoting *Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa.Super. 2000), *appeal denied,* 563 Pa. 672, 759 A.2d 920 (2000)). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal 'furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to exceptional cases.'" *Commonwealth v. Williams*, 562 A.2d 1385, 1387 (Pa.Super. 1989) (*en banc*).

> [O]nly where the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process, will such a statement be deemed adequate to raise a

substantial question so as to permit a grant of allowance of appeal of the discretionary aspects of the sentence. *See* [***Commonwealth v. Koehler***, 558 Pa. 334, 370, 737 A.2d 225, 244 (1999)] (party must articulate why sentence raises doubts that sentence was improper under the Sentencing Code).

***Mouzon, supra*** at 435, 812 A.2d at 627.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Anderson***, 830 A.2d 1013 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Sierra, supra*** at 912-13. An appellant raises a substantial question where he alleges an excessive sentence due to the court's reliance on impermissible factors. ***Commonwealth v. McNabb***, 819 A.2d 54 (Pa.Super. 2003).

Instantly, Appellant preserved his discretionary aspects of sentencing claim in his post-sentence motion and Rule 2119(f) statement. ***See Evans, supra***. Moreover, Appellant's claim raises a substantial question. ***See McNabb, supra***. Nevertheless, the court determined:

> First, that [Appellant] was in a position of trust. [Appellant] was given supervision of the victim by the victim's mother, allegedly to employ the victim and to engage in mentoring. The trial record supports this. Being in a position of trust is clearly not an element of the crime and we believed it to be an appropriate aggravating factor in considering [Appellant's] sentence.

- 9 -

Second, that [Appellant] sought to take advantage of a youthful victim to sexually assault him. This is approximately the wording employed in the Pre-Sentence Investigation and the way the aggravator was discussed at the sentencing hearing. We did not understand this wording to mean that [Appellant] engaged in conduct[,] which constituted some form of sexual assault. By definition, that is the offense itself and is necessarily considered in the sentencing guidelines. As such, we do not believe it could constitute a legitimate aggravator. Rather, we viewed this aggravator as having to do with [Appellant's] planning to commit this crime and the predatory nature of what he planned to do, *i.e.* the targeting of a vulnerable youth. This is not an element of the crime and not all rapes necessarily include this type of behavior. This conduct certainly worsens [Appellant's] offense and we properly considered it as an aggravator in sentencing.

Third, and finally, we considered the victim's suffering after being raped by [Appellant]. This particular victim was already a "troubled youth" prior to being raped by [Appellant] and his subsequent suffering from this encounter has done him more harm. Every victim suffers and is harmed, in a near permanent way, from such a violating and severe betrayal by a fellow human being. However, we viewed the inherent seriousness of rape alongside the particular suffering of this victim in considering how this should aggravate [Appellant's] sentence.

In sum, we properly considered these aggravators in determining [Appellant's] sentence.

(Post-Sentence Motion Opinion at 16-17) (internal citations and footnotes omitted). We accept the court's conclusions. Thus, Appellant's discretionary aspects of sentencing claim merits no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/5/2015</u>

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA　　:　　NO. 505 CRIMINAL 2012
　　　　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
ROBERT ENDRIKAT,　　　　　　　　　:
　　　　　　　　Defendant.　　　　　:　　POST-SENTENCE MOTION

## OPINION

The two matters before us are the Post-Sentence Motion filed by Robert Endrikat ("Defendant") and the Motion for Reconsideration of sentence filed by the Commonwealth. In the Post-Sentence Motion, the Defendant requests arrest of judgment or a new trial, and alleges as grounds for relief: (1) insufficiency of evidence; (2) weight of the evidence; (3) failure to colloquy the Defendant; (4) failure to direct a mistrial; and (5) error in allowing the Commonwealth to amend the information. Alternatively, the Defendant also requests reconsideration of his sentence, alleging that (6) the aggravators could not lawfully be considered and (7) the sentence was unreasonable and excessive. On the other hand, the Commonwealth feels that the sentence of incarceration for six to twelve years was too lenient and asks that we re-sentence the Defendant to consecutive terms of incarceration in the aggravated range. The relevant procedural history is as follows:

On May 21, 2012, the Commonwealth filed the Information charging the Defendant with Rape by Forcible Compulsion, Involuntary Deviate Sexual Intercourse, Unlawful Contact with a Minor, Sexual Assault, Corruption of Minors and Indecent Assault.



6

On January 15, 2013, the Defendant filed an Omnibus Motion challenging the prima facie case. On March 21, 2013, we held a hearing on the Omnibus Motion. On June 6, 2013, we issued an opinion and order denying the Defendant's Omnibus Motion.

On August 20, 2013, after a trial by jury, the Defendant was convicted of all charges with the exception of Rape by Forcible Compulsion. Trial counsel, an attorney with the Public Defender's Office, then filed a petition for withdrawal after stating that relations with the Defendant had broken down. On November 6, 2013, this Court allowed counsel to withdraw and appointed Donald Leeth, Esq. to act as counsel for the Defendant.

On December 9, 2013, we granted the Defendant's Motion for Transcripts.

On March 14, 2014, we sentenced the Defendant to a term of six years to twelve years on each of the charges of I.D.S.I., Unlawful Contact and Corruption of Minors. All sentences were to run concurrently. We also found that the charges of Sexual Assault, Indecent Assault without Consent and Indecent Assault by Forcible Compulsion merged with I.D.S.I. for sentencing purposes. Therefore, we imposed no additional sentence on those charges.

On March 24, 2014, the Defendant filed the Post-Sentence Motions. The Commonwealth also filed its own Motion for Reconsideration of sentence.

On May 23, 2014, we held a hearing on the instant motions and the parties filed briefs. At the hearing, the Defendant waived his claim that this Court failed to colloquy him on his right to testify.[1] The Defendant had also indicated that his claim regarding the amendment of the information depends on the sufficiency of evidence. Thus, we will not address the amendment claim beyond examining the sufficiency of evidence.

---

[1] A trial court is not required to colloquy the defendant on his right to testify. Com. v. Todd, 820 A.2d 707, 712 (Pa. Super. Ct. 2003); Com. v. Duffy, 832 A.2d 1132, 1141 fn. 3 (Pa. Super. Ct. 2003). After filing Post-Sentence Motions, defense counsel had discussed the colloquy issue with his client and explained to him that this claim would more properly be raised as the ineffective assistance of counsel during collateral proceedings.

2

We will now address the merits of the remaining claims.

### 1) Sufficiency of the Evidence

Evidence is sufficient to support the verdict where it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Com. v. Widmer, 744 A.2d 745, 751 (Pa. 2000). Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. Id. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Id.

Generally, how to resolve inconsistencies in testimony or other evidence is a question for the jury. See Com. v. Baker, 511 A.2d 777, 783 (Pa. 1986) (credibility determinations are for the jury); Com. v. Sullivan, 371 A.2d 468, 478 (Pa. 1977) ("the facts and circumstances need not be absolutely incompatible with defendant's innocence, but the question of any doubt is for the jury..."). The jury's verdict will not be overturned "unless the evidence be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances." Sullivan, 371 A.2d at 478.

To decide the Defendant's challenge vis-à-vis forcible compulsion and lack of consent, we only need discuss the sufficiency of evidence for Involuntary Deviate Sexual Intercourse by Forcible Compulsion. Our disposition for this charge is dispositive of the other charges at issues because the majority of the Defendant's convictions were lesser-included offenses of I.D.S.I. by Forcible Compulsion. The remaining convictions, i.e. Unlawful Contact

3

and Corruption of a Minor, are not implicated in the Defendant's sufficiency challenge as those charges do not include forcible compulsion or lack of consent as elements.

Here, the Defendant alleges that the record is "riddled with critical inconsistencies" and these inconsistencies support his conclusion that there was insufficient evidence. These alleged inconsistences are (1) testimony that the victim initially claimed an individual named "Billy" raped him; (2) the victim's failure to indicate his lack of consent or to physically resist the Defendant; and (3) the lack of evidence that the victim was mentally or emotionally deficient.[2] The Defendant also cites caselaw stating that there is insufficient evidence where the jury would be forced to decide between two equally reasonable and mutually inconsistent inferences.[3]

The critical showing at issue is "forcible compulsion." See 18 Pa.C.S.A. § 3123(a)(1) (I.D.S.I. by forcible compulsion). The Crimes Code defines forcible compulsion in the following manner:

> **"Forcible compulsion."** Compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied. The term includes, but is not limited to, compulsion resulting in another person's death, whether the death occurred before, during or after sexual intercourse.

18 Pa.C.S.A. § 3101 (definitions).

Forcible compulsion requires something more than a lack of consent. Com. v. Berkowitz, 641 A.2d 1161, 1164 (Pa. 1994). For example, forcible compulsion cannot be shown where the only evidence is that the victim told the defendant "no" and offered no physical resistance. Id.

To show forcible compulsion, the 'force' needs to be such as to demonstrate an absence of consent inducing submission without further resistance. Com. v. Buffington, 828

---

[2] Def.'s Brief, 5/23/14 at unnumbered pages 3-7.
[3] Def.'s Brief, 5/23/14 at unnumbered pages 2-3.

4

A.2d 1024, 1031 (Pa. 2003). As defined in the statute, the 'force' exerted may be intellectual, moral, psychological or emotional. Com. v. Eckrote, 12 A.3d 383, 387 (Pa. Super. Ct. 2010) (citation omitted).

Determining forcible compulsion is based on the totality of the circumstances of a particular case. Com. v. Frank, 577 A.2d 609, 618 (Pa. Super. Ct. 1990). Significant factors include "the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress." Com. v. Rhodes, 510 A.2d 1217, 1226 (Pa. 1986). This is a non-exclusive list. Id. Ultimately, the question of forcible compulsion aims at determining whether the victim was compelled to do a thing against his will. See id. at 1227.

In Frank, the Superior Court considered whether there was psychological forcible compulsion sufficient to convict the defendant of Rape. In that case, the defendant was a counselor and the victim was a minor, age eleven or twelve. Com. v. Frank, 577 A.2d 609, 619 (Pa. Super. Ct. 1990). The alleged rape lacked any physical force. Id. The victim's adoptive mother brought the victim to the defendant for psychological counseling. Id. During the course of multiple counseling sessions, the defendant first asked the victim to sit on his lap, then to kiss his cheek, eventually masturbating the victim and finally directing him to engage in fellatio. Id. The defendant threatened that he could interfere with the victim's adoption and cause bad things to happen to persons that the victim cared about if he told anyone about what had happened. Id. The Court also noted how the victim was isolated behind the closed doors of the counseling room and the defendant occupied a position of authority, both as a counselor and an adult. Id.

5

The Superior Court considered the above facts in finding psychological forcible compulsion and quoted the following language with approval: "[w]hile the force used to overcome the will of the victim in this case was to a large extent subtle and psychological, it nonetheless satisfies the element of forcible compulsion." Id. (citation omitted).

In Eckrote, the Superior Court again considered psychological compulsion to support a charge of Rape. The defendant grabbed the victim, apparently a minor,[4] and took her to an undisclosed location. Com. v. Eckrote, 12 A.3d 383, 387 (Pa. Super. Ct. 2010). There, he told her that he wanted to have sex with her to which the victim adamantly told the defendant "no." Id. The defendant then stated he wanted to kill himself and ordered her to remove her pants. Id. The victim complied and the defendant climbed on top of her and raped her. Id. Without elaboration, the Superior Court concluded that there was forcible psychological compulsion, based on the totality of the circumstances. Id.

The Defendant correctly states that evidence is insufficient to convict where the record merely supports two mutually inconsistent but equally reasonable inferences leading to guilt and innocence. See Com. v. Montalvo, 986 A.2d 84, 99 (Pa. 2009) ("When two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances, a jury must not be permitted to guess which inference it will adopt..."). The criminal standard of proof is enough to make it obvious that the presentation of inherently ambiguous evidence cannot support a criminal conviction. In practice such circumstances rarely arise, however, and the Defendant overzealously suggests that this legal theory applies to the situation at hand.

---

[4] In Eckrote the victim's age was never disclosed. However, she was apparently old enough to drive a car as the defendant grabbed victim's car keys during the kidnapping. Eckrote, 12 A.3d at 385.

6

The Defendant claims that another person, Billy, was implicated as the rapist at trial. The trial testimony revealed that the victim initially referred to the Defendant as "Billy" when speaking to the neighbors who he ran to for help and to the police.[5] However, this is by no means a case of mistaken identity. As the Commonwealth's DNA expert testified, the DNA recovered from the swabs of the victim's penis indicated a twenty-three trillion to one chance that the Defendant's DNA was present, purportedly in the form of saliva.[6] The victim himself also clearly identified the Defendant as the rapist.[7] Moreover, the victim was only just acquainted with the Defendant that day,[8] which could explain why the victim used the wrong name for him at the time, i.e. Billy instead of Bob. The suggestion in the Defendant's brief that it was actually another person named "Billy" who raped the victim[9] is without any support in the record and is completely spurious. In short, the jury could reasonably have determined that the Defendant was properly identified as the rapist by believing the victim's representations.

The Defendant cursorily argues that there was no expert evidence that the victim was mentally or emotionally deficient. The Defendant cites no authority in support of his claim that expert testimony was necessary and he does not even specify what evidence required expert testimony.[10] Neither did the Defendant raise such an objection at the time of trial. Evidence of 'mental deficiency' was not presented in this case as the Commonwealth did not proceed under the theory that the victim was intellectually disabled. Evidence of 'emotional deficiency,' however, understood in its lay usage, was relevant as a factor in considering whether the victim suffered psychological forcible compulsion. See Rhodes, 510 A.2d at 1226 (non-exclusive

---

[5] N.T., 8/19/13 at 36-42 (neighbor); 127 (police officer).
[6] N.T., 8/19/13 at 201-02.
[7] N.T., 8/19/13 at 84-85.
[8] N.T., 8/19/13 at 85.
[9] Def.'s Brief, 5/23/14 at unnumbered page 7.
[10] The Defendant merely references the Commonwealth's opening statements in his brief.

7

factors include respective mental condition of defendant and victim, duress, etc.). Such evidence was presented at trial. First, the jury learned that the victim was adjudicated delinquent, which is evidence of instability in a person's life if nothing else.[11] The victim went on to testify to his emotional instability due to 'anger issues,' of which the Defendant was well aware.[12] If that were not enough, the victim demonstrated his difficulties to the jury by breaking down on the stand, refusing to testify further and yelling threats and obscenities at the Defendant.[13] One does not need to be an expert to tell that the victim was emotionally unstable. Even so, this was only one of a variety of factors that was used by the jury to find forcible compulsion.

The mainstay of the Defendant's claim seems to be that, under the facts at trial, it was just as likely that the victim consented as that he was forcibly compelled. We cannot agree. It is true that the victim did not offer physical resistance, apart from fleeing, nor did he constantly reiterate that he disapproved of the Defendant's conduct, apart from telling the Defendant that he objected after the initial, uninvited sexual advance. However, the trial testimony included the following factors which could be viewed by the jury to support a verdict of guilty:

- **Respective age and physical strength.** At the time, the Defendant was in his 50s while the victim was only 16 years old.[14] The Defendant was larger than the victim[15] and worked in construction, adding to his physical strength.

- **Planning and deception.** The Defendant initially solicited the victim's presence by representing to his mother that he was trained in therapeutic methods, that he mentored other youth and that he would offer the victim work in his business and odd jobs to help

---

[11] N.T., 8/19/13 at 50 (probation and court fines), 102 ("Send me back to juvvie now").
[12] N.T., 8/19/13 at 61-62.
[13] N.T., 8/19/13 at 102.
[14] N.T., 8/19/13 at 59 (victim's age).
[15] N.T., 8/19/13 at 82.

8

pay off the victim's court costs.[16] The victim's mother was given the impression that another boy, whom she knew because he was a neighbor and a friend of her son, would also be present while her son was with the Defendant.[17] The neighbor boy was initially present that day, but the Defendant returned later to pick up the victim after the neighbor boy had left.[18]

- **Isolation**. The Defendant isolated the victim by bringing him to the Defendant's house, at night and in a relatively rural setting with few neighbors.[19] The victim was not familiar with the area and had never been there before.[20] The Defendant's trailer was small and cluttered, making it difficult for the victim to leave without the Defendant's interference.[21]

- **Purported authority**. The Defendant told the victim that he knew a simple therapy for dealing with anger.[22] The Defendant did not provide details, but represented that this involved caffeine, sugar, smoking and massage. The Defendant engaged in an repetitive ruse that therapy was being performed, directing the victim where to go, how to lay, when to take clothes off and put them back on, and questioning him on whether he was feeling the proper 'tingling' in his fingers.[23] The victim testified that he had previously been to a chiropractor and the massage itself was similar to what a chiropractor would do.[24] The Defendant's authority over the victim was also endorsed by the victim's mother, who had consented to allow her son to do work for the Defendant.

[16] N.T., 8/19/13 at 51-52.
[17] N.T., 8/19/13 at 51, 54.
[18] N.T., 8/19/13 at 63-64.
[19] N.T., 8/19/13 at 41-42.
[20] N.T., 8/19/13 at 83.
[21] N.T., 8/19/13 at 67.
[22] N.T., 8/19/13 at 62.
[23] N.T., 8/19/13 at 71-82.
[24] N.T., 8/19/13 at 93.

- **Physical force and unsolicited sexual conduct.** During one of these massages, the Defendant used his legs to pin the victim's arms.[25] He then grabbed the victim's penis without informing the victim or asking for his consent. The Defendant then proceeded to put the victim's penis in his mouth. Afterwards, he asked if the victim wanted more to which the victim responded "no."[26] The Defendant continued with the charade that this was a medical treatment. The victim testified that he did not ask to go home because he was smaller than the Defendant and he was scared of what the Defendant would do.[27] The Defendant also inserted his penis into the victim's mouth.

- **Corroborating circumstances and evidence of a guilty mind.** The victim texted his girlfriend to call his mother because he had just been raped.[28] The victim looked for an opportunity to escape and eventually ran barefoot to a neighbor's house in February weather, leaving his shoes behind because he would have had to have gone past the Defendant to retrieve them.[29] The victim sat with his knees clutched to his chest, crying.[30] He told the lady who lived there that he had been raped by the Defendant; he started to explain the 'massage therapy' but was interrupted by the need to vomit.[31] The Defendant was observed around the exterior of the neighbor's house, apparently looking for the victim with a flashlight.[32] Although he knew that the victim's mother was coming to the house to retrieve him, the Defendant started to leave in his car.[33] However, the Defendant was stopped by the state police. The Defendant told the state police that the

---

[25] N.T., 8/19/13 at 80-81.
[26] N.T., 8/19/13 at 81.
[27] N.T., 8/19/13 at 82.
[28] N.T., 8/19/13 at 117.
[29] N.T., 8/19/13 at 83.
[30] N.T., 8/19/13 at 37.
[31] N.T., 8/19/13 at 37-39.
[32] N.T., 8/19/13 at 39-40.
[33] N.T., 8/19/13 at 123-126 (defendant leaving scene and being stopped by police).

10

victim had just left his house; he neglected to mention any sexual contact between himself and the victim or to explain what precipitated the victim's flight. The Defendant's DNA was found on the victim's penis, corroborating the victim's version of events.[34]

- **Further deception and isolation.** At 10:00p.m., the victim's mother had returned from work and found that her son was not at home. She called the Defendant three times and each time the Defendant represented that the victim was unavailable for various reasons, i.e. he was in the bathroom, he was smoking a cigarette, he was outside. Eventually, she grew suspicious and told the Defendant she was coming to pick her son up.[35] The Defendant asked if the victim could spend the night, to which she replied "no."[36] On the way to the Defendant's house, she got a call from the Pennsylvania State Police informing her that her son had been assaulted and was on the way to the hospital.[37]

Considering all the above circumstances, the evidence supports a finding of forcible compulsion. To summarize some relevant facts, the 16 year old victim told the Defendant that he did not want sexual contact, and the Defendant continued despite this statement. The Defendant planned this sexual encounter, deceiving the victim and his mother into believing he would only offer mentoring and chores. After isolating the victim, the Defendant initiated sexual contact, without seeking consent, and employed force in holding the victim's arms down. The subsequent flight of the Defendant adds to the other support for his guilty mind.

---

[34] N.T., 8/19/13 at 201-02.
[35] N.T., 8/19/13 at 52-53.
[36] N.T., 8/19/13 at 57.
[37] N.T., 8/19/13 at 53.

11

It required significant naïveté for the victim to believe that the Defendant's proposed treatment was good faith therapy. However, this victim was a particularly vulnerable sixteen year old. The victim's age, lack of judgment and emotional vulnerability are exactly what the Commonwealth proposed made him a target for the Defendant and gave the Defendant the tools to manipulate him.

In sum, the evidence at trial was sufficient to find forcible compulsion and we decline to dismiss the jury's verdict.[38]

## 2) **Weight of the Evidence**

It is within the trial court's discretion to grant relief based upon the weight of the evidence. Com. v. Cousar, 928 A.2d 1025, 1035-36 (Pa. 2007). The jury generally retains the authority to believe all, part, or none of the evidence and to determine the credibility of the witnesses. See id. In deciding a weight of the evidence claim, however, the trial court need not view the evidence in the light most favorable to the verdict winner. Com. v. Vogel, 461 A.2d 604, 609 (Pa. 1983). Instead, the court may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses. Id. If the trial court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, we may set aside the verdict, grant a new trial, and submit the issues for determination by another jury. Id.

However, a new trial should not be granted because of a mere conflict in the testimony or because the trial court on the same facts would have arrived at a different

---

[38] We note that we substantially discussed this issue in our omnibus opinion dated June 6, 2013 dealing with the Defendant's challenge to the prima facie case. In our omnibus opinion, we did not consider how the Defendant pinned the victim's arms prior to initiating sexual contact. Obviously, that fact adds support to our decision here. On the other hand, we do not consider the victim's prior testimony that the Defendant would repeatedly look at a drawer of knives in the kitchen and that the victim took this as an implied threat. While introduced into evidence for the omnibus hearing, this testimony was not repeated by the victim at trial.

12

conclusion. <u>Com. v. Widmer</u>, 744 A.2d 745, 752 (Pa. 2000). The court must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. <u>Id.</u> The court does not sit as the thirteenth juror. <u>Id.</u> Rather, the role of the court is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." <u>Id.</u> (citation omitted).

Again, the Defendant alleges that "critical inconsistencies" undermine the verdict. He enumerates the previously alleged confusion as to who was the rapist, i.e. "Billy," and goes on to claim that the Defendant's 'therapeutic' method could not possibly compel the victim to engage in sexual contact. Moreover, the Defendant suggests that the victim actually consented to the conduct, rather than being compelled to it.

We heard the testimony at trial and the evidence presented by both sides and we do not agree that the verdict was against the weight of the evidence.. As in many cases of this nature, the jury undoubtedly had a difficult job in deciding who to believe and how to interpret the interaction between the Defendant and the victim. This was a difficult case for the jury to decide, particularly because it dealt with the unusual subject of a forcible compulsion that was largely non-physical. We are also well aware of the content of the Defendant's cross-examination of the victim, which solicited that the victim did not fight the Defendant, that the victim complied with the Defendant's directions 'voluntarily' and that the victim followed the Defendant's directions without physical restraint. The cross-examination also questioned why the victim would remain in this encounter if he objected to it. That being said, however, these issues were answered by a plenitude of other evidence which explained the surrounding circumstances of the situation and allowed the jury to reasonably determine that the victim was

13

forcibly compelled. To a large extent, this dispute simply involved credibility determinations. We have already discussed the trial evidence at length in our examination of sufficiency and will not repeat that examination here.

In sum, considering all the evidence at trial as well as the arguments presented by the Defendant, we do not believe this case cries out for equitable relief and we will deny his claim.

### 3) Mistrial

A motion for a mistrial is within the discretion of the trial court. Com. v. Tejeda, 834 A.2d 619, 623 (Pa. Super. Ct. 2003) (citations omitted). A mistrial is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. Id.; see also Com. v. Brown, 786 A.2d 961, 972 (Pa. 2001) (defendant has the right to have his case heard by a fair, impartial, and unbiased jury). It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. Tejeda, 834 A.2d at 623. After the jury views potentially prejudicial misconduct, the trial court may implement any appropriate remedy, including offering a remedial instruction, removing the responsible person or declaring a mistrial. See Com. v. Sanchez, 36 A.3d 24, 47-48 (Pa. 2011) (discussing same for spectator misconduct).

This trial involved the less-than-shocking revelation that the testifying complainant was extremely angry at the Defendant. This came in the form of a short outburst from the victim. In any criminal case involving an alleged victim, jurors could reasonably assume that the victim is angry. Nevertheless, we issued a curative instruction at the time that the jury was to disregard the victim's outbursts and conduct.[39] See Com. v. Philistin, 774 A.2d 741, 743 (Pa. 2001) (prejudice that might result from a spectator outburst can be cured through a

---

[39] N.T., 8/19/13 at 105.

14

remedial instruction to the jury). After closing arguments, we reiterated this instruction regarding the victim's outbursts and also told the jury that they were not to allow emotion to prejudice their determination of the facts.[40] The law presumes that the jury will follow this Court's instructions and neither do we believe that the jury became unfairly prejudiced against the Defendant simply because they knew the victim was angry at him.

The Defendant has made absolutely no effort to explain how he was prejudiced by this event. See Com. v. Styles, 431 A.2d 978, 981 (Pa. 1981) (affirming denial of motion for mistrial where defendant made no showing of prejudice). Moreover, the victim's angry outburst might have as easily been used by the defense to undermine the victim's testimony or suggest some other motive for accusing the Defendant. The jury's view of the victim's outburst was only another opportunity to assess the genuineness of the victim's anger and, as a consequence, his credibility.

In the Defendant's brief, for the first time, he also complains that the victim was hesitant to answer questions and characterized the sexual encounter with the Defendant as 'disgusting.' The Defendant did not raise these grounds at the time of trial, or even in his post-sentence motion. Instead, the Defendant's mistrial motion was based upon the threats and angry gesturing of the victim.[41] The Defendant's attempt to add additional arguments to his motion for mistrial is essentially a different motion for mistrial. This new motion is untimely and prevents us from dealing with any supposed prejudice through curative instructions. See Pa.R.Crim.P. 605(B) (motion shall be made when the prejudicial event is disclosed); see also Com. v. Boring, 684 A.2d 561, 568 (Pa. Super. Ct. 1996) (denying motion for mistrial as untimely because it occurred after relevant testimony had concluded).

---

[40] N.T., 8/20/13 at 38-39.
[41] N.T., 8/19/13 at 102-03; see also Def.'s Post-Sentence Motion, 3/24/14 at ¶4.

15

Thus, we will deny the Defendant's motion.

### 4) Colloquy on Right to Testify

As discussed above, this claim was waived by the Defendant and will be dismissed.

### 5) Amendment of Information

As discussed above, the Defendant indicated this claim depends on the sufficiency of evidence. We have already disposed of the sufficiency claim and we will not separately address the amendment of the information.

### 6) Illegal Aggravating Factors

The Defendant claims that this Court improperly considered certain aggravating factors in sentencing him because those factors are already represented in the elements of the offense and the offense gravity score.[42]

The sentencing statute provides that "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). The statute also directs us to consider the sentencing guidelines in imposing sentence. Id. The guidelines and the Sentencing Code are designed to rein in unfettered judicial discretion in sentencing. Com. v. Mitchell, 883 A.2d 1096, 1107 (Pa. Super. Ct. 2005). The guidelines include recommendations as to the appropriate sentence based, in part, on the presence of aggravating and mitigating circumstances. 204 Pa.Code § 303.13. But while the guidelines suggest the consideration of aggravating and mitigating circumstances, those terms are not defined. See id.

---

[42] Def.'s Post-Sentence Motion, 3/24/14 at ¶11. The Defendant did not file a motion for the sentencing transcript and said transcript is not present in the record at this time.

16

A sentencing court may not deviate from a standard range sentence based solely upon criterion already incorporated into the sentencing guidelines. Com. v. Darden, 531 A.2d 1144, 1148-49 (Pa. Super. Ct. 1987).

At sentencing, we found three aggravating factors.

First, that the Defendant was in a position of trust. The Defendant was given supervision of the victim by the victim's mother, allegedly to employ the victim and to engage in mentoring. The trial record supports this. Being in a position of trust is clearly not an element of the crime and we believed it to be an appropriate aggravating factor in considering the Defendant's sentence.

Second, that the Defendant sought to take advantage of a youthful victim to sexually assault him.[43] This is approximately the wording employed in the Pre-Sentence Investigation and the way the aggravator was discussed at the sentencing hearing. We did not understand this wording to mean that the Defendant engaged in conduct which constituted some form of sexual assault. By definition, that is the offense itself and is necessarily considered in the sentencing guidelines. As such, we do not believe it could constitute a legitimate aggravator. See Darden, 531 A.2d at 1148-49. Rather, we viewed this aggravator as having to do with the Defendant's planning to commit this crime and the predatory nature of what he planned to do, i.e. the targeting of a vulnerable youth.[44] This is not an element of the crime and not all rapes necessarily include this type of behavior. This conduct certainly worsens the Defendant's offense and we properly considered it as an aggravator in sentencing.

---

[43] The Defendant was convicted of Involuntary Deviate Sexual Intercourse by Forcible Compulsion, Unlawful Contact with a Minor, etc. Here, we use rape and sexual assault in a colloquial sense.
[44] We use the common meaning of predatory and do not mean to revisit the Sexual Offender Assessment Board's opinion and recommendation.

17

Third, and finally, we considered the victim's suffering after being raped by the Defendant. This particular victim was already a 'troubled youth' prior to being raped by the Defendant and his subsequent suffering from this encounter has done him more harm. Every victim suffers and is harmed, in a near permanent way, from such a violating and severe betrayal by a fellow human being. However, we viewed the inherent seriousness of rape alongside the particular suffering of this victim in considering how this should aggravate the Defendant's sentence.

In sum, we properly considered these aggravators in determining the Defendant's sentence.

### 7) Excessive Sentence and Commonwealth's Motion for Reconsideration

Finally, both the Commonwealth and the Defendant ask us to modify our sentence because it is either too lenient, or too harsh. We carefully considered the appropriate sentence in this case, including the aggravating factors we have just discussed, and we believe that removing the Defendant from society for six to twelve years is appropriate in balancing the protection of the public, the gravity of the offenses and the rehabilitation of the Defendant. We see no reason to revisit that sentence now. Considering all the evidence at the sentencing hearing and trial, including the Defendant's prior record score, background and character witnesses, we remain satisfied that the sentence was appropriate.

Accordingly, we enter the following order:

18

# COURT OF COMMON PLEAS OF MONROE COUNTY
## FORTY-THIRD JUDICIAL DISTRICT
## COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA    :    **NO. 505 CRIMINAL 2012**

       : 

       v.        : 

       : 

**ROBERT ENDRIKAT,**        : 

       **Defendant**        :        **POST-SENTENCE MOTIONS**

## ORDER

AND NOW, this 4th day of June, 2014, after hearing and consideration of the Defendant's Post-Sentence Motions and the Commonwealth's Motion for Reconsideration, said Motions are **DENIED**.  Pursuant to Pa.R.Crim.P. 720(B)(4), this order also serves to notify the Defendant of the following:

(a) the Defendant has thirty (30) days from the date of this order to file a notice of appeal to the Superior Court.

(b) the Defendant has the right to assistance of counsel in the preparation of the appeal;

(c) the Defendant has the rights, if indigent, to appeal *in forma pauperis* and to proceed with assigned counsel as provided in Pa.R.Crim.P. 122; and

(d) the Defendant has the qualified right to bail under Pa.R.Crim.P. 521(B).

                             **BY THE COURT:**

                             **STEPHEN M. HIGGINS, JUDGE**

cc:     Michael Rakaczewski, Esq., assistant district attorney
        Donald Leeth, Esq., defense counsel
        Clerk of Courts

19