J-S26025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ISHMAEL PALMERO, | : | |
| | : | |
| Appellant | : | No. 247 EDA 2017 |

Appeal from the PCRA Order December 9, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011132-2010

BEFORE:   BENDER, P.J.E., BOWES, J., and STEVENS*, P.J.E.

MEMORANDUM BY BOWES, J.:                          **FILED JUNE 07, 2018**

Ishmael Palmero appeals *pro se* from the order that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA").  We affirm.

Appellant was convicted of first-degree murder, rape, and other crimes based upon his killing of Darnell Goode, the new paramour of his ex-partner, Lotoya Dupree.  Afterwards, Appellant forced Ms. Dupree to have sexual intercourse with Appellant while he held the bloody knife he had used to stab Mr. Goode sixty-four times.  He was sentenced to concurrent terms of life imprisonment and seventeen and one-half to thirty-five years imprisonment. On Appellant's direct appeal, this Court affirmed the judgment of sentence and our Supreme Court denied his petition for allowance of appeal. **Commonwealth v. Palmero**, 121 A.3d 1119 (Pa.Super. 2015), *appeal denied*, 124 A.3d 309 (Pa. 2015).

---

\*   Former Justice specially assigned to the Superior Court.

Appellant timely filed a *pro se* PCRA petition, and the PCRA court appointed counsel. Counsel filed a motion to withdraw and no-merit letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*). The PCRA court issued notice of its intent to dismiss Appellant's petition pursuant to Pa.R.Crim.P. 907, and Appellant filed a response. The PCRA court nonetheless dismissed Appellant's petition by order of December 9, 2016, and Appellant timely filed a notice of appeal.[1] Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

On appeal, Appellant clams that he is entitled to relief because (1) his sentence of life imprisonment is illegal, (2) the prosecution suppressed information favorable to his defense in violation of **Brady v. Maryland**, 373 U.S. 83 (1963), and (3) PCRA counsel was ineffective in failing to state various claims of ineffective assistance of prior counsel. Appellant's brief at 4.

---

[1] Appellant's notice of appeal was docketed more than thirty days after the date of the order dismissing his petition. However, (1) the docket contains no indication of the date it was served upon Appellant's then-former counsel as required by Pa.R.Crim.P. 114(C)(2)(c), and (2) the date of the clerk of courts' receipt of the notice suggests it likely was placed in the hands of prison authorities by the thirtieth day. Moreover, the Commonwealth does not contend that the appeal was untimely. Therefore, we deem Appellant's notice of appeal timely. **See Commonwealth v. Jerman**, 762 A.2d 366, 368 (Pa.Super. 2000) (deeming appeal timely where clerk of courts did not properly enter appealed-from order on the docket); **Commonwealth v. Cooper**, 710 A.2d 76, 78 (Pa.Super. 1998) ("[F]or prisoners proceeding *pro se*, a notice is deemed filed as of the date it is deposited in the prison mail system.").

"Our standard of review for issues arising from the denial of PCRA relief is well-settled. We must determine whether the PCRA court's ruling is supported by the record and free of legal error." *Commonwealth v. Johnson*, 179 A.3d 1153, 1156 (Pa.Super. 2018) (internal quotation marks omitted).

Appellant first contends that his PCRA petition should not have been dismissed because he is serving a sentence which the trial court lacked the statutory authority to impose. Appellant's brief at 9-13. Appellant notes that 18 Pa.C.S. § 1102(a)(1) specifies that, except under circumstances not relevant here, "a person who has been convicted of a murder of the first degree . . . shall be sentenced to death or to a term of life imprisonment in accordance with 42 Pa.C.S. § 9711 (relating to sentencing procedure for murder of the first degree)." Section 9711(a)(1) provides "[a]fter a verdict of murder of the first degree is recorded and before the jury is discharged, the court shall conduct a separate sentencing hearing in which the jury shall determine whether the defendant shall be sentenced to death or life imprisonment."

Appellant claims that these statutes were violated because, in his case, the trial court discharged the jury without having a separate sentencing hearing, and the trial court, not the jury, determined that Appellant was to be sentenced to life imprisonment. Appellant's brief at 11. Appellant argues that, because § 9711 does not grant the trial court the authority to impose a

sentence on first-degree murder, his sentence must be vacated. *Id*. at 12 (citing, *inter alia*, **Commonwealth v. Arest**, 734 A.2d 910, 912 (Pa.Super. 1999) ("If no statutory authorization exists for a particular sentence, then that sentence is illegal and . . . must be vacated.")).

Our legislature has determined that only two sentences are permissible for an adult convicted of first-degree murder: death or life imprisonment. That is the import of 18 Pa.C.S. § 1102(a)(1). In order for the death penalty to be a sentencing option post-conviction, the prosecution must, initially, disclose its intent to seek the death penalty at the time of arraignment, and file a notice of the aggravating circumstances alleged. **Commonwealth v. Buck**, 709 A.2d 892, 896 (Pa. 1998). When the Commonwealth has not sought the death penalty, which it did not in the instant case, *ipso facto* the only sentence allowed under 18 Pa.C.S. § 1102(a)(1) is that of life imprisonment. Indeed, the imposition of life imprisonment upon a first-degree murder conviction is mandatory in non-capital cases, and no "individualized consideration of offender and crime," which is the purpose of the procedures established in 42 Pa.C.S. § 9711, is required. **Commonwealth v. Yount**, 615 A.2d 1316, 1321 (Pa.Super. 1992). Accordingly, the PCRA court did not err in finding no merit in Appellant's first claim.

Appellant next contends that the Commonwealth committed a **Brady** violation by withholding exculpatory evidence. Specifically, he contends that the discovery materials provided to the defense omitted the portions of Ms.

- 4 -

Dupree's medical records reflecting her statements made to the attending physician and "all physical and scientific findings" by the physician and medical staff that "would support or negate rape." Appellant's brief at 14.

"The crux of the *Brady* rule is that due process is offended when the prosecution withholds material evidence favorable to the accused." *Commonwealth v. Wholaver*, 177 A.3d 136, 158 (Pa. 2018). "To succeed on a *Brady* claim, the defendant must show: (1) evidence was suppressed by the prosecution; (2) the evidence, whether exculpatory or impeaching, was favorable to the defendant; and (3) prejudice resulted." *Commonwealth v. Hannibal*, 156 A.3d 197, 209 (Pa. 2016).

The PCRA court determined that there is no indication that any rape kit materials or medical records were withheld from Appellant. PCRA Court Opinion, 8/29/17, at 13. "Indeed, this evidence was admitted into the record without objection by stipulation at trial." *Id*. (citing, N.T., 9/26/13, at 45-56).

Our review of the record supports the PCRA court's determination. Among the trial exhibits in the certified record is Commonwealth Exhibit 152, which is Thomas Jefferson University Hospital records for Ms. Dupree that include the nursing triage report, the attending physicians notes, lab results, and sexual assault medical report reflecting Ms. Dupree's narrative of the incident and the physical exam report. Appellant has failed to identify any materials that were withheld, let alone ones favorable to the defense. Therefore, we conclude that the PCRA court did not err in finding no merit in

Appellant's **Brady** claim.[2]  **See**, **e.g.**, **Commonwealth v. Roney**, 79 A.3d 595, 610 (Pa. 2013) (explaining **Brady** claim failed because, *inter alia*, the "PCRA court found that the Commonwealth had disclosed all the information in its possession").

Appellant's remaining claims are of ineffective assistance of counsel. The following principles guide our review.

> Counsel is presumed effective, and an appellant has the burden of proving otherwise.  In order for Appellant to prevail on a claim of ineffective assistance of counsel, he must show, by a preponderance of the evidence, ineffective assistance of counsel which so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

> To prevail on his ineffectiveness claims, Appellant must plead and prove by a preponderance of the evidence that: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) Appellant suffered prejudice because of counsel's action or inaction. With regard to the [reasonable basis] prong, we will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.  To establish the [prejudice] prong, Appellant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction.

---

[2] Furthermore, as the Commonwealth notes, Ms. Dupree's medical records do not support a **Brady** claim because they were not within the exclusive control of the prosecution, but were equally available to Appellant.  Commonwealth's brief at 11 (citing, *inter alia*, **Commonwealth v. Miller**, 746 A.2d 592, 600 (Pa. 2000) (holding **Brady** claim meritless because hospital records in question were equally available to prosecution and defense)).

***Commonwealth v. Brown***, 161 A.3d 960, 965 (Pa.Super. 2017) (citations and quotation marks omitted).

Appellant contends that PCRA counsel should have amended the PCRA petition to state various claims of prior counsel's ineffectiveness.[3] Appellant's brief at 16-25. Among these allegations are Appellant's contentions that all of his attorneys rendered ineffective assistance in failing to raise or litigate the claims that the trial court lacked authority to sentence him and that the Commonwealth committed a ***Brady*** violation. As we have determined that those claims lack merit for the reasons discussed above, none of his attorneys was ineffective in failing to pursue them. ***Commonwealth v. Sneed***, 45 A.3d 1096, 1115 (Pa. 2012) ("Counsel will not be deemed ineffective for failing to raise a meritless claim.").

Appellant also asserts that his direct appeal counsel was ineffective in failing to preserve the claim that the evidence at trial was insufficient to sustain his rape conviction. In Appellant's direct appeal, this Court reviewed the sufficiency-of-the-evidence claims regarding the murder and sexual assault convictions, but held that the claim regarding the rape conviction was waived for failure to include it in the Rule 1925(b) statement. ***Palmero***,

---

[3] Appellant preserved the issues related to PCRA counsel's effectiveness by raising them in the PCRA court in response to the notice of intent to dismiss. ***See*** Objections to Intent to Dismiss, 11/16/16, at 3-7; ***Commonwealth v. Rykard***, 55 A.3d 1177, 1186 (Pa.Super. 2012).

*supra* (unpublished memorandum at 8). Appellant argues that he was prejudiced by counsel's failure to preserve the claim because "the rape evidence is so weak and inconclusive that, as a matter of law" his conviction would have been overturned. Appellant's brief at 18.

Appellant seems to base his argument on the fact, repeatedly reiterated throughout his brief, that Ms. Dupree testified that she did not think that she had been raped. N.T. Trial, 9/24/13, at 171-72; N.T. Trial, 9/25/13 a.m., at 114. The statute under which Appellant was convicted provides that a person commits rape where he engages in sexual intercourse with a complainant by forcible compulsion. 18 Pa.C.S. § 3121(a)(1).

> It is well-established that in order to prove the forcible compulsion component, the Commonwealth must establish, beyond a reasonable doubt, that the defendant used either physical force, a threat of physical force, or psychological coercion, since the mere showing of a lack of consent does not support a conviction for rape by forcible compulsion. . . . [F]orcible compulsion includes not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will.

*Commonwealth v. Eckrote*, 12 A.3d 383, 387 (Pa.Super. 2010) (citations and quotation marks omitted).

Notably absent from the elements is a requirement that the victim is aware of the legal requirements of the crime or is of the opinion that she has been subjected to an act that legally qualifies as "rape." As the PCRA court noted, Ms. Dupree testified that she did not want to have sex with Appellant after he brutally murdered her lover, but Appellant had threatened her, saying

he would "do the same thing to you that I did to him." PCRA Court Opinion, 8/29/17, at 14. Further, he made his "request" for sex while brandishing the knife with which he had killed Mr. Goode. Ms. Dupree testified that she did not feel that she could say "no," and that she was scared to scream because she feared Appellant would stab her. N.T., 9/24/13, at 156-57. As such, the evidence was sufficient to sustain Appellant's rape conviction. **Eckrote**, **supra**.

Appellant next contends that trial counsel was ineffective in failing to cross-examine or impeach Ms. Dupree with the statement she gave to police on June 2, 2010, and that all other counsel were ineffective for not raising the claim. Appellant's brief at 19-20. Initially, we note that the statement to which Appellant refers is not that of Ms. Dupree, but rather that of Officer Jose Viera reporting to the homicide division what Ms. Dupree had told him upon his arrival at the crime scene. Appellant's brief at Exhibit A. Moreover, Appellant's argument again hinges upon Ms. Dupree's failure to indicate that she had been raped, a fact we have held lacks the import Appellant ascribes to it.

At any rate, the PCRA court found Appellant's claim lacked merit, offering the following analysis.

> The victim was extensively cross-examined by trial counsel. Further, "the mere fact that inconsistencies in testimony exist does not *ipso facto* prove perjury." **Commonwealth v. Dyson**, 378 A.2d 408, 411 n.5 (Pa. Super. 1977). However, it is not clear there is an actual inconsistency in the testimony. The fact that the victim stated she did not believe she had been raped does not

mean that she was not raped. She stated that "he had forced me to have sex before in the relationship. I didn't really know that that was rape." N.T., 9/24/2013, at 172. . . . Further, the victim testified that the reason she did not tell police about the rape right away was due to her fear of petitioner. *Id*. at 166-168. Thus, there was clearly forcible compulsion, and no amount of cross examination of the witness would have changed the outcome of the trial. Therefore, neither counsel can be deemed ineffective for failing to preserve a meritless claim.

PCRA Court Opinion, 8/29/17, at 16-17.

The PCRA court's determination is legally correct and supported by the record. ***See*** N.T., 9/25/13 a.m., at 29-145 (cross-examination of Ms. Dupree); N.T., 9/25/13 p.m., at 16-50 (continued cross-examination of Ms. Dupree). Accordingly, Appellant's argument entitles him to no relief from this Court. ***Sneed***, ***supra*** at 1115 ("Counsel will not be deemed ineffective for failing to raise a meritless claim.").

Finally, Appellant maintains that trial counsel was ineffective for failing to present expert testimony to establish a diminished capacity defense. Appellant's brief at 23-25. The PCRA court analyzed the claim thusly.

> In order to obtain relief for failure to call an expert witness, petitioner must demonstrate: (1) that the witness existed; (2) that the witnesses was available; (3) that counsel was informed of the existence of the witnesses or should have known of their existence; (4) that the witnesses were available and prepared to cooperate and testify on petitioner's behalf; and, (5) that the absence of the testimony prejudiced petitioner. . . . [Appellant] did not comply with these requirements, as he does not even identify the potential expert witness. . . .
>
> Here, trial counsel presented evidence that [Appellant] had ingested PCP and alcohol, and this court instructed the jury that voluntary intoxication could reduce a charge of first[-]degree murder to third[-]degree murder. An expert would not have

- 10 -

demonstratively added to the evidence such that a different verdict would have resulted. Despite his alleged intoxication, [Appellant] understood the nature of his crime and its ramifications, disposed of one of the murder weapons, and then raped the victim. [Appellant's] claims are factually incorrect and meritless.

PCRA Court Opinion, 8/29/17, at 15-16.

Once again, the PCRA court's finding is supported by the record[4] and evidences no error of law. Appellant points to no available expert who would have offered testimony to support the diminished capacity defense. Accordingly, Appellant has not convinced us that relief is due. *Commonwealth v. Miner*, 44 A.3d 684, 688 (Pa.Super. 2012) ("It is an appellant's burden to persuade us that the PCRA court erred and that relief is due.").

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/18

---

[4] *See*, *e.g.*, N.T., 9/26/13, at 174-75 (counsel eliciting testimony about Appellant's use of PCP, rum, and beer on the day in question, that Appellant was drunk and high, and that Appellant experienced hallucinations in such a state); N.T., 9/27/13, at 106-07 (instruction to jury that voluntary intoxication can render accused incapable of forming the specific intent to kill and that Commonwealth had burden to disprove the defense).