J-A23029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JAMES A. LAWSON | : | |
| | : | |
| Appellant | : | No. 2832 EDA 2019 |

Appeal from the Judgment of Sentence Entered August 27, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000834-2015

BEFORE:   KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED FEBRAURY 9, 2021**

Appellant James A. Lawson appeals from the judgment of sentence imposed after a jury found him guilty of rape by forcible compulsion and sexual assault.[1]  Appellant challenges the sufficiency and weight of the evidence. Appellant also requests leave to supplement his brief to include a Pa.R.Crim.P. 600 claim.  For the reasons stated herein, we affirm.

The trial court summarized the factual history of this appeal as follows:

> In January of 2015, [the] complainant . . . 19 years-old was dating Appellant's son . . . . On January 5, 2015, [the complainant] and [Appellant's son] started the evening at [the complainant's] mother's house, before leaving for Appellant's house.  At Appellant's, [the complainant] and [Appellant's son] watched television and ate dinner, while Appellant was in his room.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(a)(1) and 3124.1, respectively.

After dinner, [the complainant] was in the kitchen with [Appellant's] son, who was doing dishes, listening to music with his headphones in. Appellant called [the complainant] to his room and she went to see what he wanted.

When [the complainant] entered the bedroom, Appellant said he wanted to talk and told her to sit on the couch in the bedroom. He then closed the door, locked it and put something under the door. [The complainant] got up and tried to leave the room, but Appellant stood between [her] and the door and pushed her back. Appellant then pushed [the complainant] on to the bed, pinned her down with his legs and attempted to put his penis in her mouth, whereupon she bit his penis.

At that point, Appellant pulled off [the complainant]'s pants and underwear and inserted his penis in her vagina. [The complainant] tried to scream, but Appellant was covering her mouth with his hand. The radio was on in the room, and [the complainant] could hear [Appellant's son] in the kitchen doing the dishes.

At some point[,] there was a knock at the door, which Appellant ignored. Upon a second knock, Appellant got up and opened the door to [Appellant's son]. [The complainant] told [Appellant's son] what happened, [Appellant and his son argued], then [the complainant] and [Appellant's son] returned to [the complainant]'s mother's home. Once at her mother's house, [the complainant] told her mother what had happened and her mother called the police.

While on patrol on January 6, 2015, at approximately 2:01 AM, police officers [Thomas] Dempsey and [Shawn] Bossert received a radio call for a rape in progress . . . . Upon arrival, the officers were met by [the complainant's] mother. The officers observed [the complainant] sitting on the couch crying. [The complainant] told the officers that Appellant . . . had raped her, and described the events. Also present in the room was [Appellant's son]. Officer Dempsey memorialized the information provided by [the complainant].

The officers then transported [the complainant] to Appellant's home, where she waited while he was brought out by police. [The complainant] was then taken to the Special Victim's Unit, where she was examined, and she gave a statement to Detective [Thomas] Martinka. DNA from Appellant was found in [the complainant]'s vagina and on her vulva.

Trial Ct. Op., 1/29/20, at 2-3 (record citations omitted).

Before trial, Appellant filed *pro se* motions for modification of bail and to dismiss all charges pursuant to Pa.R.Crim.P. 600 on February 29 and March 2, 2016, respectively. At that time, Appellant was represented by counsel, who took no further action concerning the *pro se* motions. Appellant again filed *pro se* Rule 600 and speedy trial motions on April 10, 2018, while represented by counsel. Counsel again did not take further steps as to the *pro se* motions.[2]

Appellant's first trial ended in a mistrial on August 3, 2018, after a jury was unable to reach a unanimous verdict. Following a second trial, the jury found Appellant guilty of rape by forcible compulsion and sexual assault but acquitted him of involuntary deviate sexual intercourse (IDSI) on October 18,

_____

[2] Appellant was initially represented by Frederick Lowenberg, Esq., when he filed his first *pro se* Rule 600 motion. In July of 2017, the trial court relieved Attorney Lowenberg and appointed Kathryn Coviello Cacciamani, Esq. The record also contains a letter from Appellant to the trial judge dated March 7, 2019, following his conviction but before sentencing. In the letter, Appellant asserted that the denial of his *pro se* Rule 600 motions was "questionable," that his counsel was ineffective, and that he wished to defend himself. However, as discussed below, the trial court did not consider nor deny Appellant's *pro se* Rule 600 motions.

2018.[3]  The trial court sentenced Appellant to an aggregate seven to fourteen years' incarceration on August 27, 2019.[4]

Appellant timely filed a post-sentence motion on September 5, 2019, seeking modification of his sentence.  The trial court denied the motion on September 23, 2019.

Appellant timely filed a notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement challenging the weight of the evidence and the Commonwealth's failure to prove the complainant's lack of consent beyond a reasonable doubt.  In a timely supplemental Rule 1925(b) statement, Appellant added a claim that the trial court erred in denying his *pro se* Rule 600 motion to dismiss.

The trial court filed a responsive opinion concluding that: (1) the verdicts were not against the weight of the evidence; (2) the trial court was under no obligation to consider Appellant's *pro se* motions, nor would the court have granted the motion even if properly raised; and (3) the evidence was sufficient

---

[3] We note that the Commonwealth argued to the jury that rape "is when you vaginally penetrate somebody by force" and that the IDSI charge concerned "forcible penetration of the mouth."  N.T., 10/17/18, at 72-73.  The Commonwealth argued, and the trial court instructed the jury, that sexual assault concerned "either vaginal or oral penetration without someone's consent."  **Id.** at 73, 93, 94.

[4] The docket reflects that Appellant requested continuances of sentencing between January and May of 2019.  Appellant's counsel, Attorney Cacciamani, then filed a motion to withdraw, which the trial court granted.  The trial court appointed present counsel, Jules Norris Szanto, Esq., to represent Appellant on May 16, 2019.  Appellant thereafter requested additional time for preparations between May and July of 2019.

to establish the complainant's lack of consent. The trial court concluded that the judgment of sentence should be affirmed.

We have reordered Appellant's three issues as follows:

1. Whether the weight of the evidence is against Appellant's convictions for rape by forcible compulsion . . . and sexual assault.

2. Whether the case against Appellant should have been dismissed pursuant to Pa.[R.]Crim.P[.] 600.

3. Whether the evidence was insufficient to sustain Appellant's convictions for rape by forcible compulsion and sexual assault.

Appellant's Brief at 7 (some formatting altered).

Initially, we consider whether Appellant has preserved his issues for appellate review. As to Appellant's first issue concerning the weight of the evidence, it is well settled that a defendant must raise a weight-of-the-evidence challenge before the trial court in order to preserve the issue. *See* Pa.R.Crim.P. 607 (stating that "[a] claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion" (some formatting altered)). Instantly, Appellant has not cited any part of the record showing where he preserved this issue before the trial court, *see* Pa.R.A.P. 2117(c), 2119(e), nor have we not found any indication of an oral or written motion seeking a new trial. Therefore, Appellant's weight-of-

the-evidence challenge is waived.[5]  *See id.*; *see also Commonwealth v. Roche*, 153 A.3d 1063, 1071 (Pa. Super. 2017).

As to Appellant's second issue concerning his Rule 600 claim, we agree with the trial court that Appellant's *pro se* motions did not properly raise the issue in the trial court nor preserve the issue for appellate review.  There is no right to hybrid representation in Pennsylvania.  *Commonwealth v. Jette*, 23 A.3d 1032, 1036 (Pa. 2011).  *Pro se* motions filed when a defendant is represented by counsel generally have no legal effect.[6]  *See Commonwealth v. Ali*, 10 A.3d 282, 293 (Pa. 2010) (noting that a defendant's *pro se* Rule

_____

[5] We note that Appellant raised a weight-of-the-evidence challenge in his Rule 1925(b) statements and that the trial court addressed Appellant's issue in its Rule 1925(a) opinion.  However, our Supreme Court has stated that the facts that an appellant included a weight-of-the-evidence challenge in a Rule 1925(b) statement and the trial court considered the challenge in a Rule 1925(a) opinion will not preserve the issue for appellate review.  *See Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009).

However, even if Appellant preserved this issue, we would find no abuse of discretion in the trial court's assessment of Appellant's weight-of-the-evidence challenge and affirm on the basis set forth in the trial court's opinion.  *See* Trial Ct. Op. at 4-6; *see also Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (noting this Court's standard of review of a weight-of-the-evidence challenge and emphasizing that appellate review is a review of the trial court's exercise of discretion and "not of the underlying question of whether the verdict is against the weight of the evidence" (citations and emphasis omitted)).

[6] When confronted with a *pro se* filing by a defendant who is represented by counsel, the clerk of the court is required to accept it for filing, time stamp and docket it with the date of receipt, and place the filing in the record.  Pa.R.Crim.P. 576(A)(4).  Additionally, the clerk of the court must forward copies of the time-stamped documents to the defendant's counsel and counsel for the Commonwealth.  Pa.R.Crim.P. 576(A)(4).

1925(b) statement filed when he was represented by counsel "was a legal nullity" (citation omitted)); ***Commonwealth v. Nischan***, 928 A.2d 349, 355 (Pa. Super. 2007) (concluding, in part, that a represented defendant's *pro se* post-sentence motion was a nullity and did not preserve a challenge to the discretionary aspects of a sentence).

Instantly, we agree with the trial court that Appellant was not entitled to have the court consider his *pro se* Rule 600 motions because he was represented by counsel. ***See*** Trial Ct. Op. at 7-8; ***see also Jette***, 23 A.3d at 1036; ***Ali***, 10 A.3d at 293. Appellant's counsel took no further action to bring the Rule 600 issues before the trial court, and therefore the trial court did not consider nor rule on his *pro se* motions. For these reasons, we conclude that Appellant's *pro se* motions were legal nullities that did not preserve these issues for appeal. ***See Nischan***, 928 A.2d at 355. Accordingly, we deny Appellant's request for supplemental briefing on the merits of his Rule 600 claim.

In his final issue, Appellant challenges the sufficiency of the evidence. We conclude that Appellant's arguments were adequately preserved and set forth in his Rule 1925(b) statement.[7] ***See*** Pa.R.Crim.P. 606(7) (noting that "a challenge to the sufficiency of the evidence [may be] made on appeal").

---

[7] We note, however, that while Appellant claimed that the evidence was insufficient to prove the complainant's lack of consent in his Rule 1925(b) statement, his argument on appeal focuses on forcible compulsion. While the presentation of new theories of relief in an appellate brief may warrant waiver,

Appellant, in support of his claim, asserts that Appellant's son was in the home at the time of the incident, and knocked on the door to Appellant's bedroom, but heard "nothing until [c]omplainant opened the door and began crying and screaming." Appellant's Brief at 18. Appellant essentially contends that despite the presence of Appellant's son in the home, there was a lack of corroboration or circumstantial evidence, such as sounds of "shouting, fighting, or conversation," to establish that a lack of consent. *Id.*

Appellant further argues:

[T]he record is devoid of any evidence that either [c]omplainant or Appellant was of an age, mental or physical condition, or that the atmosphere and physical setting of the incident manifested forcible compulsion sufficient to sustain a conviction for rape by forcible compulsion, or sexual assault. Nor is there any evidence— circumstantial or direct—that the alleged force used was sufficient to entirely subdue [c]omplainant for twenty-five to thirty minutes, without ever losing consciousness, without any injury to [c]omplainant or Appellant, and without [Appellant's son] able to hear anything, even though he was able to hear the subtle sound of a belt buckling. In fact, the only documented injury at all was documented as **left side** abdominal pain, but at all times throughout the prosecution, [c]omplainant referred to pain in her right side. The only conclusion reasonably drawn from the evidence is that [c]omplainant and Appellant had sex. Having sex with one's boyfriend's father may be unscrupulous, but it is not criminal.

*Id.* at 18-19 (emphasis in original).

_____

the issues in this case were relatively straightforward and the trial court was able to address the issue raised by Appellant. Therefore, we decline to find waiver based on manner in which Appellant presented this issue in his Rule 1925(b) statement and will address the issues of consent and forcible compulsion separately. *See Commonwealth v. Smyser*, 195 A.3d 912, 916 (Pa. Super. 2018).

The Commonwealth responds that the evidence proves the complainant's lack of consent beyond a reasonable doubt. Commonwealth's Brief at 10. Moreover, the Commonwealth asserts that that there was sufficient evidence to prove forcible compulsion based on the complainant's testimony and that Appellant's acts "cannot be distinguished" from similar cases addressing the element of forcible compulsion. *Id.* at 8-9.

The standards governing our review are well settled.

This Court's standard for reviewing sufficiency of the evidence claims is as follows:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Izurieta*, 171 A.3d 803, 806 (Pa. Super. 2017) (citations omitted).

Section 3121 of the Crimes Code defines rape by forcible compulsion as follows:

**(a) Offense defined.—**A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant:

(1) By forcible compulsion.

18 Pa.C.S. § 3121(a)(1).

Section 3101 defines sexual intercourse as "[i]n addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S. § 3101. "Forcible compulsion" means, in part, "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa.C.S. § 3101.

"[O]ur Supreme Court stated that forcible compulsion includes not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will." *Commonwealth v. Eckrote*, 12 A.3d 383, 387 (Pa. Super. 2010) (citation and quotation marks omitted). The "degree of force involved in rape . . . is defined, not in terms of the physical injury to the victim, but in terms of the effect it has on the victim's volition." *Commonwealth v. Irvin*, 393 A.2d 1042, 1044 (Pa. Super. 1978).

"Effective consent to sexual intercourse will negate a finding of forcible compulsion." *Commonwealth v. Rhodes*, 510 A.2d 1217, 1225 (Pa. 1986).

Moreover, a "mere showing of a lack of consent does not support a conviction for rape . . . by forcible compulsion." ***Commonwealth v. Brown***, 727 A.2d 541, 544 (Pa. 1999) (some formatting altered); ***see also Commonwealth v. Berkowitz***, 641 A.2d 1161, 1164-65 (Pa. 1994).

> Section 3124.1 of the Crimes Code defines sexual assault as follows:
>
> Except as provided in section 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

18 Pa.C.S. § 3124.1. Section 3124.1 "is intended to fill the loophole left by the rape and involuntary deviate sexual intercourse statutes by criminalizing non-consensual sex where the perpetrator employs little if no force." ***Commonwealth v. Pasley***, 743 A.2d 521, 524 n.3 (Pa. Super. 1999) (citation omitted).

It is well established that resistance is not required to sustain a conviction for rape by forcible compulsion or sexual assault. ***Commonwealth v. Cramer***, 195 A.3d 594, 602 (Pa. Super. 2018); ***Commonwealth v. Gonzalez***, 109 A.3d 711, 721-22 (Pa. Super. 2015). "Furthermore, the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." ***Cramer***, 195 A.3d at 602 (citation omitted).

Here, concerning the issue of consent, the trial court concluded:

> [T]he evidence of lack of consent was demonstrated by the testimony of the complainant that she was locked in the room, was pushed onto the bed when she tried to leave, she bit Appellant's penis when he tried to force it in her mouth, and

> Appellant covered her mouth when she tried to call for help. Viewed in a light most favorable to the Commonwealth, the evidence demonstrates that the complainant did not consent to Appellant's rape and sexual assault.

Trial Ct. Op. at 7.

Following our review, we discern no basis to disturb the trial court's analysis. We add that Appellant's legal argument based on the lack of evidence of resistance is not dispositive of a sufficiency challenge to rape by forcible compulsion or sexual assault. *See Cramer*, 195 A.3d at 602; *Gonzalez*, 109 A.3d at 721-22. We further note that complainant testified Appellant called her to his bedroom stating that he wanted to talk. N.T., 10/16/18, at 15, She testified that she tried to "escape" the room when Appellant pushed her back on to the bed and that she bit his penis when he tried put it in her mouth. *Id.* at 17. She stated that Appellant pinned her down on the bed, then took off her pants and underwear, and vaginally penetrated her, while continuing to cover her mouth with on his hand as she tried to scream for Appellant's son. *Id.* at 21-22, 58. Moreover, she testified that during this intercourse, Appellant was on top of her completely and her hand were "pinned" underneath her thighs. *Id.* at 22-23. Lastly, the jury heard evidence that the complainant was "really upset" and "having trouble talking" when reporting the assault to Officer Dempsey. N.T., 10/15/18, at 45. This evidence was sufficient to establish the complainant did not consent to sexual intercourse, either orally or vaginally, for the purposes of sexual

assault and rape by forcible compulsion. ***See Cramer***, 195 A.3d at 602. Accordingly, Appellant's argument lacks merit.

To the extent Appellant challenges the element of forcible compulsion, we agree with the Commonwealth that the evidence set forth above was sufficient to convict Appellant of rape by forcible compulsion. Specifically, we find no merit to Appellant's attempt to equate the degree of physical force used by Appellant to the unique circumstances considered in ***Gonzalez***, which involved a complainant who was suffering from cerebral palsy. ***See Gonzalez***, 109 A.3d at 716. Similarly, Appellant's focus on the absence of physical injury is misplaced. ***See Irvin***, 393 A.2d at 1044.

As stated above, the complainant here testified that she entered Appellant's bedroom based on Appellant's representation that he wanted to talk. Appellant locked the door, and when she tried to escape Appellant's room, Appellant pushed her onto the bed. Appellant pinned her down on the bed and ultimately disrobed her with one hand while holding his other hand over her mouth as she attempted to scream to call Appellant's son. We conclude that this evidence of the physical force used by Appellant here was sufficient to demonstrate force used to compel the complainant to engage in sexual intercourse against the complainant's will. ***Compare Eckrote***, 12 A.3d at 387 (concluding the Commonwealth overwhelmingly established forcible compulsion when the defendant drove the complainant unwillingly to an undisclosed location, told her he wanted to have sex, threatened to kill himself when the complainant refused and ordered her to take her pants off, then

climbed on top of complainant and penetrated her and did not stop despite the complainant's attempts to push him off her with her hands) **with Berkowitz**, 641 A.2d at 1164-65 (mere use of body weight as the sole means of force did not establish forcible compulsion).

In sum, we conclude that Appellant failed to properly preserve his weight-of-the-evidence and Rule 600 claims and that Appellant's sufficiency claim merits no relief.  Accordingly, we affirm the judgment of sentence.[8]

---

[8] We note that prior to sentencing, the parties briefly discussed whether rape by forcible compulsion and sexual assault should merge.  The trial court initially indicated the offenses may merge but then concluded they did not and imposed a concurrent sentence for sexual assault.  This Court may raise an issue of merger *sua sponte*.  **Commonwealth v. Watson**, 228 A.3d 928, 941 (Pa. Super. 2020).

> A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence.  Therefore, our standard of review is *de novo* and our scope of review is plenary.  Whether sentences merge is governed by statute:
>
> > No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense.  Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.
>
> 42 Pa.C.S. § 9765.

**Commonwealth v. Tighe**, 184 A.3d 560, 584 (Pa. Super. 2018) (some citations omitted and some formatting altered), *aff'd*, 224 A.3d 1268 (Pa. 2020).

Our Supreme Court has noted that because the element of forcible compulsion "encompasses a lack of consent," sexual assault is a "lesser-included offense" of sexual offenses, such as IDSI by forcible compulsion.  **Commonwealth v.**

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/09/2021

_____

**Buffington**, 828 A.2d 1024, 1031-32 (Pa. 2003). However, the High Court also rejected the defendant's argument that his acquittals for rape of an unconscious person, IDSI by forcible compulsion and of an unconscious person, barred retrial for sexual assault. **Id.** at 1033. Specifically, the **Buffington** Court explained that "[c]onsistent with the acquittals on the rape and involuntary deviate sexual intercourse charges, various jurors may have nevertheless maintained the view that [the defendant] visited non-consensual sexual intercourse on [the complainant], albeit without forcible compulsion and at a time during which [the complainant] was conscious and aware." **Id.**

Instantly, we acknowledge that the jury acquitted Appellant of IDSI, which the Commonwealth argued concerned oral penetration by force or the threat of force. Notwithstanding this acquittal, the jury could properly find Appellant guilty of sexual assault based on a non-consensual oral sexual intercourse without forcible compulsion. **See** 18 Pa.C.S. §§ 3101, § 3124.1; **cf. Buffington**, 828 A.2d at 1033. For this reason, it appears that a merger challenge would fail due to the two separate acts before the jury, *i.e.*, oral and vaginal sexual intercourse, for which the jury could have found him guilty of sexual assault and rape by forcible compulsion, respectively.

- 15 -