J-S21011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                            : PENNSYLVANIA
                                            :
           v.                               :
                                            :
                                            :
                                            :
DYLAN THOMAS WILLIAMS                        :
                                            :
           Appellant                        : No. 1252 MDA 2022

Appeal from the Judgment of Sentence Entered April 18, 2022
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0000534-2020

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                            : PENNSYLVANIA
                                            :
           v.                               :
                                            :
                                            :
                                            :
DYLAN THOMAS WILLIAMS                        :
                                            :
           Appellant                        : No. 1253 MDA 2022

Appeal from the Judgment of Sentence Entered April 18, 2022
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0000535-2020

BEFORE:   BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED: AUGUST 23, 2023**

Dylan Thomas Williams appeals from the aggregate judgment of

sentence of thirteen years and seven months to twenty-seven years and two

months of incarceration, followed by three years of probation, imposed as to

---

[*] Retired Senior Judge assigned to the Superior Court.

his jury convictions for various sexual offenses at docket number 534 of 2020 ("Docket 534") and docket number 535 of 2020 ("Docket 535"). We affirm.

Appellant was charged at Docket 534 for sexually assaulting C.B. when she was fourteen and fifteen years old, and at Docket 535 for sexually assaulting M.B. when she was twelve and thirteen years old.[1] At the time of the incidents, Appellant was between twenty and twenty-one years old, and was dating and living with A.B., the older sister of C.B. and M.B. Appellant and A.B. first lived in an apartment in Kingston, Pennsylvania and then moved to an apartment in nearby Plymouth. *See* N.T. Jury Trial, 4/21/22, at 30-31, 34, 117. Both girls were very close with A.B. and Appellant. C.B. visited them at their Kingston apartment nearly every day. Appellant would pick her up from school and the two would watch movies or play video games until A.B. came home from work. *Id*. at 33-35. M.B. would also visit them at their apartment and watch movies or play video games with Appellant, A.B., and C.B. *Id*. at 116-19.

When M.B. was twelve or thirteen, she was changing her shirt in a room at her father's house when Appellant walked in. Although he did not say anything at the time, he later messaged her that he "wouldn't mind being there next time." *Id*. at 122-23. At some point after, Appellant fondled M.B.'s breasts while he, M.B., A.B., and C.B. were watching a movie together on the bed at the Kingston apartment. *Id*. at 119-21. During that incident, Appellant

---

[1] We note that the trial court did not set forth the facts of the underlying cases in its Rule 1925(a) opinion to this Court.

also rubbed his exposed penis against M.B.'s bare, lower back. *Id*. at 128-29. Around the same time, Appellant began commenting that in four years C.B., who was fourteen at the time, could run away with Appellant. Not long after, his comments, which C.B. had initially interpreted as jokes, turned into unwanted touching of C.B.'s breasts and buttocks while watching movies in bed in Kingston. *Id*. at 37-44.

In late August of 2019, Appellant and A.B., who was pregnant with Appellant's child, moved to the Plymouth apartment. From the move until September 6, 2019, Appellant's sexual contact with M.B., then thirteen, and C.B., then fifteen, continued and, in fact, escalated. During an overnight stay in September, Appellant once again touched M.B.'s breasts, this time underneath her shirt. *Id*. at 124-25, 140. When she asked him why he was doing that, he said "I don't know. Just don't tell anybody." *Id*. at 125.

In late August or early September, C.B. and Appellant were watching a movie in the bedroom of the Plymouth apartment, waiting for A.B. to come home. As C.B. began to fall asleep on her side, Appellant reached over, rolled C.B. onto her back, held her hands above her head, removed her pants and his pants, and inserted his penis into her vagina. *Id*. at 53, 70. The next contact occurred when Appellant was watching a movie with C.B. and M.B. C.B. was lying on the couch with a blanket over her. Appellant lifted her legs up and sat down beneath her. He then removed his and C.B.'s pants, held her legs down, and touched her with his penis. *Id*. at 46, 54-55. Finally, on September 6, 2019, C.B. was at the apartment to help prepare for A.B.'s baby

- 3 -

shower the following day. After A.B. went upstairs to sleep at Appellant's suggestion, Appellant called C.B. over to the couch to look at a ring he was considering buying to propose to A.B. C.B. sat on the couch to look at the ring and then moved to the opposite end of the couch. Appellant followed her, held her hand down by her side, put his hand down her pants, and placed his finger inside her vagina. When C.B. protested, he told her to be quiet so as not to wake A.B. Appellant then removed his pants and C.B.'s pants and inserted his penis into her vagina. *Id*. at 49-51.

During each encounter, C.B. told Appellant not to touch her and, every time, his response was the same: "Don't tell anybody, I'm not going to do it again. Calm down. Be quiet." *Id*. at 53-54. C.B. told her boyfriend after Appellant began touching her and, after the first time Appellant had sexual intercourse with C.B., she told her grandmother and asked for advice. Her grandmother told her to tell Appellant not to do it again or she would tell somebody. *Id*. at 60-62, 65. Around September 12 or 13, 2019, M.B. told a school counselor. *Id* at 126. When nothing immediately happened, M.B. disclosed Appellant's touching to a friend and C.B. on September 14, 2019. C.B. called their grandmother and the friend told her parents, who called the police. Later that day, Appellant and A.B. picked up C.B. and M.B. from their father's house for a pre-arranged stay at the Plymouth apartment for the weekend. Not long after, the police retrieved C.B. and M.B. from the apartment. *Id*. at 63-65, 126-28. As C.B. left, Appellant asked her if she had told anybody. *Id*. at 65.

- 4 -

After the police removed M.B. and C.B., Appellant called his work friend, Michael Siley. During a subsequent conversation, Appellant admitted to sleeping with C.B. twice and accidentally touching M.B.'s breasts. *Id*. at 155-58. When confronted, Appellant also admitted to A.B. that he had sex with C.B. twice. *Id*. at 176. Within days, both M.B. and C.B. were taken to the Child Advocacy Center ("CAC") for forensic interviews. Later, M.B. reported to a school nurse, Michelle Binker, that she had been raped by Appellant and requested a pregnancy test. *Id*. at 129-30, 219-20. Upon questioning by Detective Stephen Gibson, M.B. clarified that Appellant had not raped her and that she made the statement to obtain a pregnancy test in order to disprove an unrelated school rumor. *Id*. at 129-31, 208-09.

As a result of the foregoing, Appellant was charged at Docket 534 with aggravated indecent assault, two counts of statutory assault, corruption of minors, indecent assault, and rape, all of which related to conduct against C.B. At Docket 535, pertaining to M.B., Appellant was charged with two counts of corruption of minors and two counts of indecent assault. Appellant proceeded to a consolidated jury trial on April 21, 2021. The Commonwealth presented testimony from C.B., M.B., A.B., their grandmother, Mr. Siley, and Detective Gibson. Appellant played the girls' CAC videos and presented testimony from Ms. Binker.

At the conclusion of the trial, the jury convicted Appellant at Docket 534 of one count each of aggravated indecent assault, corruption of minors, indecent assault, and rape, and two counts of statutory sexual assault. At

Docket 535, Appellant was found guilty of one count of corruption of minors and two counts of indecent assault. The trial court sentenced Appellant to an aggregate term of incarceration of fifteen to thirty years, followed by three years of probation. That sentence included a mandatory minimum sentence of ten to twenty years for the rape conviction. Having determined that Appellant was a sexually violent predator ("SVP"), Appellant was also subjected to lifetime sexual offender registration.

Appellant filed a post-sentence motion and the Commonwealth responded. Following a hearing, the trial court denied in part and granted in part Appellant's motion. The court denied Appellant's challenges to the sufficiency of the evidence to sustain his rape conviction and the weight of the evidence, and reserved Appellant's ineffective-assistance-of-counsel claim for collateral review. However, the court found the mandatory sentence did not apply to Appellant's rape conviction because the conduct occurred before the effective date of the relevant statute. *See* Order, 3/8/22, at unnumbered 1-3. Therefore, it vacated the rape sentence and granted Appellant's motion for resentencing. The court also granted resentencing at Docket 535 because Appellant was mistakenly sentenced on two counts of corruption of minors and only one count of indecent assault. *Id*. at unnumbered 3.

On March 31, 2022, the trial court resentenced Appellant to a shortened aggregate sentence of thirteen years and seven months to twenty-seven years

and two months of incarceration, followed by three years of probation.[2]
Appellant timely filed post-sentence motions. On April 18, 2022, the trial court
entered an order correcting the sentencing order to reflect the agreement of
the parties that the maximum sentence for rape should have been 132
months, not 122, in accordance with the aggregate sentence imposed. On
August 9, 2022, the trial court entered an order denying Appellant's post-
sentence motions.

Appellant simultaneously filed the instant, timely appeal and a concise
statement pursuant to Pa.R.A.P. 1925(b). The trial court issued a responsive
Rule 1925(a) opinion. In this Court, Appellant presents the following issues:

1. Whether the imposition of longer, consecutive sentences
   after a successful challenge to the imposition of a mandatory
   sentence resulted in an excessive, unreasonable and
   vindictive sentence?

2. Whether the evidence at trial was sufficient to establish the
   forcible compulsion element of rape?

---

[2] To achieve this reduced aggregate sentence, the court shortened the rape
sentence, extended the terms of incarceration for statutory sexual assault at
Docket 534, and shortened the term of incarceration for the indecent assault
conviction at Docket 535 that was incorrectly imposed as if for a charge of
corruption of minors originally. Additionally, instead of running some
sentences concurrently as in the original sentencing order, the court ran all
sentences consecutively upon resentencing.

As discussed *infra*, the resentencing order contained a mathematical error that
was corrected by an amended sentencing order. Specifically, the individual
sentences imposed add up only to 316 months because the trial court
mistakenly imposed a maximum term of 122 months, instead of 132 months,
for the rape conviction.

3. Whether the jury unanimously found [Appellant] guilty of rape by forcible compulsion due to the lack of specificity in the Information and jury instructions?

4. Whether the evidence at trial was so weak and inconclusive that the court abused its discretion in denying a new trial?

5. Whether the court erred in denying a post sentence hearing on ineffectiveness of counsel, given that [Appellant] had new counsel, there was error apparent of record at trial, and the refusal to conduct such a hearing has created an undue delay in considering these issues?

6. Whether the SVP finding should be reversed or remanded for a new hearing because the report improperly relied on unproven and inaccurate allegations?

Appellant's brief at 5 (cleaned up).

Appellant first alleges that the trial court's imposition of consecutive and increased individual sentences "was vindictive and not based on principles of the Sentencing Code, but rather to mathematically come as close to the previously imposed sentence as possible while remaining within the standard range of sentencing guidelines." Appellant's brief at 19. Appellant argues that because no new information was introduced, other than the inapplicability of the mandatory sentence, "an increase in the sentences was not warranted." *Id*. at 21.

The Commonwealth contends that this issue implicates the discretionary aspects of sentencing as it challenges the court's decision to impose consecutive sentences. *See* Commonwealth's brief at 15. Since Appellant failed to include a statement pursuant to Pa.R.A.P. 2119(f) in his brief, the Commonwealth asks this Court to find the issue unreviewable. *Id*. Appellant,

on the other hand, maintains that this issue, which asserts a claim of vindictiveness, implicates the legality of his sentence and is reviewable despite the lack of a Rule 2119(f) statement. **See** Appellant's reply brief at 3 (citing **Commonwealth v. Prinkey**, 277 A.3d 554 (Pa. 2022). Assuming for the sake of argument that Appellant's challenge implicates the legality of his sentence and therefore is not waived by failing to include a Rule 2119(f) statement, we find his vindictiveness claim infirm.

As detailed above, Appellant's aggregate sentence following resentencing was reduced from fifteen to thirty years of incarceration, to thirteen years and seven months to twenty-seven years and two months. Despite receiving a **shorter** aggregate sentence upon resentencing, Appellant claims that the trial court was vindictive in increasing some of his individual sentences and running them consecutively in what he purports is an impermissible attempt to maintain the original aggregate sentence. **See** Appellant's brief at 19. However, "[w]e have held that preserving the integrity of a prior sentencing scheme is a legitimate sentencing concern [and] a trial court properly may resentence a defendant to the same aggregate sentence to preserve its original sentencing scheme." **Commonwealth v. Barnes**, 167 A.3d 110, 124 (Pa.Super. 2017) (*en banc*) (cleaned up). Stated simply, given that Appellant received a **lesser** aggregate sentence upon resentencing, he "was not the victim of a vindictive sentence on the part of the trial court[.]" **Id**. at 125 (finding no vindictiveness where the defendant's aggregate sentence remained the same following remand); **see also Commonwealth**

*v. Rosario*, 2023 WL 4104055 (Pa.Super. filed June 21, 2023) (non-precedential decision) (applying **Barnes**, holding that the presumption of vindictiveness was rebutted by the trial court's explanation that it intended to preserve the original sentencing scheme and Rosario benefited on resentencing by receiving a shorter aggregate sentence, despite two of the individual sentences being increased).  Thus, regardless of how we review Appellant's sentencing issue, his claim warrants no relief.

Appellant next argues that the evidence was insufficient to prove the element of forcible compulsion as to his rape conviction.  According to Appellant, there was insufficient evidence of a threat through physical force or psychological coercion during either instance of sexual intercourse.  **See** Appellant's brief at 22-23.  He maintains that C.B.'s description of the events varied and that she "did not voice any objection that could be heard by others who were in the room or in close proximity while she claimed she was being forcibly raped" and "suffered no injuries[.]"  **Id**. at 23-24.

We consider this claim pursuant to the following principles.

> In reviewing sufficiency of evidence claims, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all the elements of the offense.  Additionally, to sustain a conviction, the facts and circumstances which the Commonwealth must prove must be such that every essential element of the crime is established beyond a reasonable doubt.  Admittedly, guilt must be based on facts and conditions proved, and not on suspicion or surmise.  However, entirely circumstantial evidence is sufficient so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt.

Any doubts regarding a defendant's guilt may be resolved by the factfinder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The fact finder is free to believe all, part, or none of the evidence presented at trial.

*Commonwealth v. Eckrote*, 12 A.3d 383, 385–86 (Pa.Super. 2010) (cleaned up).

It is well-established that in order to prove the forcible compulsion component, the Commonwealth must establish, beyond a reasonable doubt, that the defendant used either physical force, a threat of physical force, or psychological coercion, since the mere showing of a lack of consent does not support a conviction for rape by forcible compulsion. . . . [F]orcible compulsion includes not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will. Further, the degree of force required to constitute rape is relative and depends on the facts and particular circumstances of a given case.

*Id*. at 387 (cleaned up).

Here, C.B. testified that during the first incident, which began as she was falling asleep, Appellant held both of her hands above her head as he removed their pants and inserted his penis into her vagina. *See* N.T. Jury Trial, 4/21/22, at 53, 70. During the second incident, he held her hand down as he inserted his finger into her vagina and when she protested, he told her to be quiet and then once again removed their pants and inserted his penis into her vagina. *Id*. at 49-51. Thus, Appellant physically restrained her. Moreover, these acts occurred within the context of an escalating pattern of unwanted sexual advances from someone C.B. considered like a brother and who always responded to her protests in the same way: "Don't tell anybody,

- 11 -

I'm not going to do it again. Calm down. Be quiet." ***Id***. at 53-54. Based on the foregoing, we conclude that the evidence viewed in the light most favorable to the Commonwealth established that an act of sexual intercourse was performed by forcible compulsion.

Appellant next contends that the jury's verdict as to rape was not unanimous. ***See*** Appellant's brief at 25-26. According to Appellant, the criminal information averred that the rape occurred sometime between September 2018 and September 2019, and the jury was not instructed "that they had to find unanimously that he committed the same act on the same date and that act constituted forcible compulsion." ***Id***. at 25. Thus, assailing the jury instruction, he argues that "it is impossible to know which encounter or encounters each juror was basing his or her verdict upon. However, to be unanimous, the jurors would have to agree that the elements of the offense had been proven beyond a reasonable doubt with respect to one of the incidents." ***Id***. at 26. Given the purportedly inadequate instructions, Appellant posits that the verdict cannot be considered unanimous.

The Commonwealth counters that Appellant waived this claim by failing to timely and specifically object to the jury instruction at trial. ***See*** Commonwealth's brief at 21. We agree. It is axiomatic that "[i]n order to preserve a claim that a jury charge was erroneously given, the Appellant must have objected to the charge at trial." ***Commonwealth v. Lake***, 281 A.3d 341, 347–48 (Pa.Super. 2022) (cleaned up).

- 12 -

Here, after the trial court instructed the jury, the court asked whether either attorney had any objections. Appellant's counsel responded, "No, Your Honor." *See* N.T. Jury Trial, 4/21/22, at 285. Moreover, as to any challenge to the unanimity of the verdict, Appellant asked that the jury be polled and each juror indicated that he or she agreed with the verdict. *See id*. at 289-90. Based on the foregoing, Appellant has failed to preserve a challenge to the court's instruction. Even if Appellant had preserved this claim of error, the record establishes that the jury's verdict was unanimous. Accordingly, he is not entitled to relief.

Next, Appellant alleges that the trial court erred in denying his motion for a new trial based upon the claim that the verdicts were against the weight of the evidence. *See* Appellant's brief at 26-27. In Appellant's view, "[t]he jury failed to give adequate weight to the lack of corroboration, the lack of medical evidence, the lack of a prompt complaint, and the inconsistent statements, therefore the trial court abused its discretion in denying the motion for a new trial." *Id*. at 27-28.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (cleaned up).

The trial court found that "[n]othing in the record leads to the conclusion that the verdict was against the weight of the evidence. After having had an opportunity to view the exhibits and observe the witnesses at trial and listen to their testimony, this court was not at all shocked by the jury's verdict." Trial Court Opinion, 11/3/22, at unnumbered 11. Rather, the court concluded that "[t]he weight of the evidence overwhelmingly established [Appellant's] guilt beyond a reasonable doubt." ***Id***. Upon review, Appellant points to nothing in the certified record to evince that the trial court's decision was manifestly unreasonable, a result of misapplication of the law, or based upon "partiality, prejudice, bias, or ill-will." ***Clay***, ***supra*** at 1055 (cleaned up). As we discern no abuse of discretion on the trial court's part, no relief is due.

In his penultimate issue, Appellant argues that the trial court erred in depriving Appellant of a hearing on his claim of ineffective assistance of counsel and instead deferring the issue to a future collateral appeal through the PCRA. ***See*** Appellant's brief at 28. We review this claim with the following principles in mind:

> Generally, a criminal defendant may not assert claims of ineffective assistance of counsel on direct appeal. ***See Commonwealth v. Holmes***, 79 A.3d 562, 577-80 (Pa. 2013). Instead, such claims are to be deferred to PCRA review. However, our Supreme Court has recognized three exceptions to the general rule. In ***Holmes***, the Court held that a trial court has discretion to address ineffectiveness claims on direct review in cases where (1) there are extraordinary circumstances in which trial counsel's ineffectiveness is apparent from the record and "meritorious to the extent that immediate consideration best serves the interests

of justice;" or (2) "there is good cause shown," and the defendant knowingly and expressly waives his entitlement to seek subsequent PCRA review of his conviction and sentence. *Id.* at 563-64. More recently, our Supreme Court adopted a third exception, which requires "trial courts to address claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining subsequent PCRA review."

*Commonwealth v. James*, ___ A.3d. ___, 2023 WL 3939576, at *3 (Pa.Super. June 12, 2023) (cleaned up).

Here, Appellant raised fourteen claims of ineffectiveness by trial counsel, plus an additional allegation of cumulative prejudice. *See* Post-Sentence Motion, 4/11/22, at 6-12. Appellant contends that some of his allegations of ineffectiveness are apparent on the record. Moreover, he posits that extraordinary circumstances exist justifying consideration of all his ineffectiveness claims on direct appeal because he already has new counsel and "[i]t will soon be two years since the guilty verdict in this case and Appellant will not have had the chance to argue the ineffectiveness of his trial counsel." *See* Appellant's brief at 28-29.

At the outset, we reject Appellant's invocation of a time-restriction reason supporting review because he still has more than adequate time to seek collateral review before his PCRA eligibility will expire. In declining to hold a hearing, the trial court found that he had not raised any "meritorious and apparent claims" and that this was "not an extraordinary case" warranting review of such claims on direct appeal. Trial Court Opinion, 11/3/22, at unnumbered 11. After reviewing the certified record, we conclude that the

trial court did not abuse its discretion in determining that Appellant's prolix ineffectiveness claims were best deferred until collateral review.

Finally, Appellant argues that his SVP designation should be reversed or remanded for a new SVP hearing because the report relied on unproven allegations and inaccuracies. **See** Appellant's brief at 30-31. The only inconsistency espoused in his brief is that the report referenced the offenses taking place over one year, which is consistent with the criminal information, whereas the trial testimony indicated a period of less than six months. **Id**. at 30. The Commonwealth contends that Appellant waived this claim by stipulating to the admission of the report at the time of sentencing and failing to develop the claim within his brief. **See** Commonwealth's brief at 27-28. Indeed, instead of specifying the inaccuracies or unproven allegations in his brief, Appellant rather hinges the resolution of his claim on this Court's then-pending decision in **Commonwealth v. Aumick**, ___ A.3d ___, 2023 WL 3939850 (Pa.Super. 2023) (*en banc*), in which we ruled on this precise issue.

In **Aumick**, we held that the Sexual Offender Assessment Board ("SOAB") member "was permitted to consider the affidavit of probable cause, criminal information, criminal complaint, preliminary hearing transcript, and the investigative reports prepared by Child Protective Services when assessing Aumick." **Aumick**, **supra** at *8.

> Pursuant to revised Subchapter H, the SOAB **must** undertake a comprehensive assessment of a defendant convicted of a sexually violent offense by considering the fifteen factors set forth in section 9799.24(b)(1)-(4). Section 9799.24(c) expressly requires that "[a]ll State, county and local agencies, offices and entities in

- 16 -

this Commonwealth, including juvenile probation officers, **shall cooperate by providing copies of records and information as requested by the board in connection with the court-ordered assessment** . . . ." 42 Pa.C.S. § 9799.24(c) (emphasis added). Moreover, within ninety days of a defendant's qualifying conviction, the SOAB **must** prepare a written report regarding its assessment which includes, at a minimum, the following information: (1) a concise narrative of the individual's conduct; (2) whether the victim was a minor; (3) the manner of weapon or physical force used or threatened; (4) if the offense involved unauthorized entry into a room or vehicle occupied by the victim; (5) if the offense was part of a course or pattern of conduct involving multiple incidents or victims; and (6) previous instances in which the individual was determined guilty of an offense subject to this subchapter or of a crime of violence as defined in section 9714(g) (relating to sentences for second and subsequent offenses).

Given these statutory mandates, it is clear that the legislature intended that the SOAB member consider . . . the information contained in records provided by state, county and local agencies, offices and entities in this Commonwealth when making an SVP assessment and preparing a statutorily compliant written report. To be sure, it would be the rare occasion on which the SOAB member would be able to fulfill its statutory obligations if its SVP assessments and written reports were limited to facts contained in a plea colloquy, admitted into evidence, or determined by the trier of fact.

*Id*. (emphases in original, cleaned up).

Moreover, this Court emphasized the significance of the context of an SVP hearing, where "the judge is not tasked with evaluating the veracity of the facts underlying the expert's testimony." *Id*. (citation omitted). Rather, the information "presented at an SVP hearing [is] not being offered for the truth of the matter asserted," but rather "to supply the basis for the expert's opinion in accordance with our Rules of Evidence." *Id*. (citations omitted).

Here, Appellant stated he had no objection to the admission of the SOAB evaluator's report other than a general objection to the proceeding itself. *See* N.T. SVP Hearing, 1/6/22, at 3-4. In argument, he highlighted the discrepancy in one year versus six months mentioned above, disagreed with the finding of "other specific Paraphilic Disorder[,]" and challenged the reference to petitions filed against Appellant for protection from abuse. *Id*. at 5-6. Based on the foregoing, Appellant waived any challenge to the admission of the SVP report. *See id*. at *9 n.14 (finding challenge to the admissibility of the report waived for failing to object to its admission during the SVP hearing). As for Appellant's challenge to the SVP report's reliance on allegedly unproven allegations or inconsistencies with the trial testimony, *Aumick* controls and this issue fails.

Since Appellant has failed to raise any challenge compelling us to disturb his convictions or judgments of sentence, we affirm the judgments of sentence.

Judgments of sentence affirmed.

Judge Pellegrini joins this Memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/03/2023