J-S40015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
:  PENNSYLVANIA
:
v.  :
:
:
JEREMY BAILEY  :
:
Appellant  :  No. 134 MDA 2025

Appeal from the Judgment of Sentence Entered January 15, 2025
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0002016-2022

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY LAZARUS, P.J.:  **FILED: JANUARY 16, 2026**

Jeremy Bailey appeals from the judgment of sentence, entered in the Court of Common Pleas of Dauphin County, following his convictions of two counts of first-degree murder[1] and one count each of persons not to possess firearms,[2] firearms not to be carried without a license,[3] and recklessly endangering another person (REAP).[4]  After careful review, we affirm.

This case arises from a shooting that occurred in the early morning of April 3, 2022, at the USA Fried Chicken located at the corner of Derry and

---

[1] **See** 18 Pa.C.S.A. § 2502(a).

[2] **Id.** at § 6105(a).

[3] **Id.** at § 6106(a)(1).

[4] **Id.** at § 2705.

13th Streets in Harrisburg, Dauphin County.[5]  *See* N.T. Jury Trial, 11/1/24, at 44.

> Sergeant Christopher Auletta of the Harrisburg Bureau of Police (H[B]P) was patrolling an area approximately one (1) block from the USA Fried Chicken [when he] heard screaming, observed people fleeing, and was ultimately directed to the front of USA Fried Chicken[,] where he discovered a man [lying] on the sidewalk who appeared to have been shot in the head.
>
> In response to a "shots fired" call, at 1:39 a.m., Officer Sethton Wiest [of HBP] arrived on scene shortly thereafter and ran towards 13th and Thompson Streets because people present at the incident advised him there was a second victim in that location. He found a black male laying on the east side of that intersection who appeared to have a bloody wound in his upper left chest.
>
> The victims were both ultimately pronounced deceased and identified as Leonard Quattlebaum and Nelbenson Sanchez. Quattlebaum suffered a gunshot wound to the left upper chest, and Sanchez suffered a gunshot wound to his forehead.  Bullets were recovered from each victim [and] provided to the police. Ballistics testing determined that the bullets removed from each victim were .32 caliber and were discharged from the same gun.
>
> The police began gathering surveillance video footage from the area of the shooting, including from the USA Fried Chicken. Although unable to identify the shooter's face in the video, a general description was obtained that was transmitted over the radio to other officers.  Officer Erik Henry [of HBP] was able to identify Brooke Bechtold on the video from prior contacts with her.
>
> Bechtold testified that she was at the USA Fried Chicken at approximately 1:30 a.m. on April 3, 2022, playing [Pennsylvania] skill games[.]  Quattlebaum was playing the game next to her.  A black male approached them, pointed a silver revolver at Quattlebaum, and then both individuals ran from the restaurant.

_____

[5] USA Fried Chicken's exact location is 1266 Derry Street.  *See* Trial Court Opinion, 6/17/25, at 3.

Bechtold took cover near a window, looked outside, and saw Sanchez lying on the ground with a gunshot wound to his head.

As she ran from the restaurant, Bechtold picked up a cell phone she found on the sidewalk. She noticed that someone named "June Bug" was repeatedly calling the phone. Bechtold hid the phone on the passenger side axle near the rear tire of a white box truck situated on Nectarine Street. Several days later, she contacted the police because she was aware they were looking for her and told them she had taken the phone and where it was. The police recovered the phone exactly where Bechtold told them it would be. Surveillance videos captured Bechtold retrieving the phone from the sidewalk, thereby confirming her account of events, and demonstrated that the phone was dropped by the shooter.

Bechtold was shown a photo array containing [Bailey]'s photograph[.] She identified the person in the bottom left of the array, [Bailey], as the shooter. She told police that she was 60%-70% certain of her identification.

Maurice Harrison, also known as "June Bug", had been friends with [Bailey] for approximately four [] to six [] months in April 2022. On the night of the shooting, he picked up [Bailey] in his black Range Rover with three [] black rims and one [] silver rim. They went to Arooga's, a downtown bar and restaurant. [Bailey] told Harrison about how "a couple [of] guys broke into his house."

While still at Arooga's, [Bailey] asked to borrow Harrison's Range Rover so he could go pick up a girl. Harrison gave him the keys and said, "Don't do nothing stupid in my car but come back and pick me up." [Bailey] never returned with Harrison's Range Rover. Harrison attempted to call [Bailey], as confirmed by Bechtold's testimony that the phone she retrieved from the scene of the shooting received repeated calls from "June Bug", but [Bailey] never answered.

Harrison eventually located his Range Rover on 4th Street in the Uptown section of Harrisburg. Inside the car, he found a black coat on the passenger seat with a "Calvin Klein" patch that [Bailey] had been wearing. The interior of the right pocket and the right sleeve near the cuff tested positive for the presence of gunshot powder residue. The jacket was also found to contain [Bailey's] DNA. He also found a shell casing underneath cigarette butts and ash in the ashtray that was later determined to be from a .32 caliber bullet, the same type recovered from the victims.

In April 2022, Samora Stump lived in the same building as [Bailey] at 3 North 16[th] Street in the City of Harrisburg. She testified that Quattlebaum was selling crack out of the building, that he did not want [Bailey] also selling crack in the building, and that the two [] men argued about "territory."

A few days before Quattlebaum and Sanchez were killed, [Bailey] got into a fight in the building with [] Quattlebaum's [friend] named "LB." On the day of the shooting, Quattlebaum went to [Bailey]'s apartment to attempt to resolve the dispute that led to the fight with "LB." Stump saw [Bailey] and Quattlebaum run from the building with Quattlebaum screaming, "He tried to shoot me. He tried to shoot me, but the gun jammed." Although Stump testified that she saw a gun in [Bailey]'s hand, the testimony did not establish that it was the revolver observed by Bechtold.

Later that day, a group of Quattlebaum's friends went into [Bailey]'s apartment and took some of his property as retribution. Police officers who later executed a search warrant of [Bailey]'s apartment described it as being "ransacked" and a "total mess," lending credence to the veracity of Stump's claim and furthering [Bailey]'s motive to kill Quattlebaum based on the escalating tensions. []

[] A surveillance video[, from earlier in the day,] from the [City Gas and Diesel] station depicted [Bailey] on his cell phone at the precise time of the 911 call [to report the burglary of his apartment]. He could clearly be seen wearing the same clothes as the shooter in the video from the USA Fried Chicken, including the black jacket with the visible "Calvin Klein" patch that tested positive for his DNA and gunshot powder residue. Additionally, at the time of his arrest[, Bailey] was wearing black Nike sneakers with a white sole and black Nike swoosh on the outside of each sole. These very identifiable sneakers could also be clearly seen being worn by the shooter in the USA Fried Chicken video.

Nonetheless, when confronted with the video from City Gas and Diesel, [Bailey] denied that the person on the phone, wearing the jacket left in Harrison's Range Rover, was him, although he had previously admitted to making the phone call from that location before he knew the police had visual evidence of him wearing the same clothes as the shooter. []

Furthermore, an examination of various video footage supports the conclusion that [Bailey] was in the vicinity of the shooting and at other relevant locations[,] which bolsters the trial testimony

offered by Bechtold and Harrison. A camera located at B & M Auto showed the shooter entering a black Range Rover with three [] black rims and one [] silver rim, matching the unique description of Harrison's vehicle. A video from the USA Fried Chicken demonstrated that the Range Rover had a tan interior, a fact later confirmed by an inspection of Harrison's vehicle.

A camera at the 6th Street Market showed [Bailey] walking into the store and using a blue debit card and wallet. It also depicted [Bailey] in possession of Harrison's Range Rover. When [Bailey] was arrested for the murders and searched incident thereto, he was in possession of the same wallet, a blue debit card, and a receipt from the 6th Street Market evidencing that he purchased gas on the debit card at 4:47 a.m. on April 3[, 2022].

Trial Court Opinion, 6/17/25, at 3-9 (formatting altered; citations to the record omitted).

On November 1, 2024, following a jury trial, Bailey was found guilty of the above-mentioned charges. The trial court deferred sentencing and ordered the preparation of a presentence investigation report. On January 15, 2025, the trial court sentenced Bailey to two consecutive terms of life imprisonment without parole on the two counts of first-degree murder. The trial court also sentenced Bailey to a consecutive term of 10 to 20 years of incarceration on the firearms prohibited charge and imposed a fine in the amount of $500.[6]

Bailey, who was represented by counsel at trial and sentencing, did not file a post-sentence motion. On January 27, 2025, although still represented by counsel, Bailey filed a *pro se* notice of appeal, which was docketed and

---

[6] No further sentence was imposed for Bailey's other convictions. **See** N.T. Sentencing Hearing, 1/15/25, at 14-15.

forwarded to this Court. On February 7, 2025, in consideration of the trial court's request, this Court issued an order directing the trial court to conduct a **Grazier**[7] hearing to determine whether Bailey's waiver of counsel was knowing, intelligent, and voluntary. **See** Order, 2/7/25. Following a **Grazier** hearing, at which Bailey requested the appointment of counsel, the trial court appointed appellate counsel on March 11, 2025.

Both Bailey and the trial court complied with the requirements of Pa.R.A.P. 1925. Bailey raises the following claim for our review: "Whether the trial court erred in accepting the jury's verdict where the Commonwealth failed to present sufficient [evidence] to [prove that Bailey] was present and fired shots towards the decedents." Appellant's Brief, at 4 (unnecessary capitalization omitted).

We note that Bailey does not challenge any of the statutory elements of his convictions, but solely the sufficiency of the evidence as it pertains to his identity as the perpetrator of the crimes of first-degree murder and REAP. **See** Appellant's Brief, at 11-15. He has not presented any challenge to his firearm-related convictions. Accordingly, we need not engage in an analysis of the elements of each offense.

Bailey alleges that the evidence was insufficient to prove his identity because: (1) the shooter was unidentifiable from the USA Fried Chicken surveillance video; (2) Bechtold did not identify him with "100% certain[ty]"

---

[7] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

from a photo array; (3) the firearm Bailey allegedly possessed in the previous altercation with Quattlebaum was inoperable; (4) the jacket was not found in Bailey's possession, but in someone else's car, and contained DNA from three individuals; and (5) the cellphone was not found on Bailey and "only puts in the phone in the area, not [Bailey]." *Id.* at 13-15.

We review Bailey's challenge to the sufficiency of the evidence under the following standard:

> [W]hether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to enable the fact[-]finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt.
>
> In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. . . . Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.
>
> These principles apply to a challenge to the sufficiency of the evidence offered to identify a defendant as the perpetrator of the alleged crime.

***Commonwealth v. Pledger***, 332 A.3d 29, 34 (Pa. Super. 2025) (internal citations omitted).

Moreover, "guilt must be based on facts and conditions proved, and not on suspicion or surmise." ***Commonwealth v. Eckrote***, 12 A.3d 383, 386

(Pa. Super. 2010). "However, entirely circumstantial evidence is sufficient so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Id.*

> [E]vidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

*Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011) (en banc).

Based on our review of the record, the Commonwealth presented sufficient evidence to establish Bailey's identity as the shooter. Specifically, the Commonwealth presented evidence that Bechtold identified Bailey as the shooter several days after the shooting. *See* N.T. Jury Trial, 11/1/24, at 135-36.[8] Furthermore, while the shooter was unidentified in the surveillance video from USA Fried Chicken, the Commonwealth introduced into evidence the City Gas and Diesel surveillance camera footage, taken a few hours prior to the shooting, depicting Bailey wearing the same clothes—a black "Calvin Klein" jacket and black Nike sneakers with a white sole and a black Nike swoosh on the outside of each sole—as the shooter. *See* N.T. Jury Trial, 11/1/24, at 384-85. Finally, Bailey's assertion that there was no evidence that the firearm

---

[8] We note that her level of certainty in this identification is not relevant to our review of the sufficiency of the evidence. *See Orr*, *supra* (uncertainty in identification testimony goes to weight of evidence).

he allegedly possessed in the prior altercation with Quattlebaum was operable is irrelevant to his sufficiency argument where the Commonwealth did not connect that firearm to the firearm used in the shooting to prove the identity of the shooter. *See* N.T. Jury Trial, 11/1/24, at 83-84, 126 (Stump testifying she saw Bailey with gun, but her testimony did not establish it was same revolver observed by Bechtold).

Contrary to Bailey's argument, the Commonwealth also connected Bailey with the Range Rover, in which the shooter was seen leaving the scene of the crimes, and Bailey's black "Calvin Klein" jacket was found inside the vehicle. *See id.* at 181-82 (HBP Detective Brian Carrerrie describing specific Range Rover shooter was seen entering). Harrison testified that the Range Rover was his vehicle, but he allowed Bailey to borrow the vehicle on the night of the murders. *Id.* at 166-67. He also testified that the black jacket found in the vehicle was Bailey's. *Id.* The black jacket contained gunshot residue, as well as Bailey's DNA along with that of two other unidentified people. *Id.* at 334-35 (parties stipulating to admit forensic report by RJ Lee Group into evidence that concluded Calvin Klein jacket had gunshot residue in right pocket and right sleeve near cuff); *id.* at 352-54 (Krista Spear, forensic DNA scientist with the Pennsylvania State Police Bureau of Forensic Services, testifying Bailey's DNA matched DNA found on jacket). The combination of Harrison's testimony, the surveillance video from the City Gas and Diesel showing Bailey wearing the same jacket, and the DNA evidence sufficiently connected him to the jacket and placed him in the Range Rover that the

shooter was seen entering at the time of the shooting. ***See Orr***, ***supra*** (evidence of items of clothing can be used to establish identity of perpetrator).

While the cellphone was not found on Bailey's person, the trial court aptly summarized the relevant evidence that connected Bailey to the cellphone found at the scene of the crimes:

> [] Harrison provided the police with two [] separate cell phone numbers he used to contact [Bailey]. Jason Lucas, [Bailey]'s landlord, testified that he used 717-710-[XXXX], one of the numbers provided by Harrison, to communicate with [Bailey]. Indeed, this phone was the one Harrison repeatedly called when [Bailey] did not return with his vehicle, was dropped by the shooter, and [was] removed from the sidewalk [by Bechtold] at the scene of the shooting and ultimately provided to the police.

> [Bailey] was the registered subscriber of the phone in question. In fact, [Bailey] utilized this phone to call 911 on April 2, 2022, from the City Gas & Diesel [g]as [s]tation to report the [b]urglary of his apartment. A surveillance video from the gas station depicted [Bailey] on his cell phone at the precise time of the 911 call. []

> [] [Bailey] also could not explain to the police where his phone was. In response to repeated questions, he simply kept stating that his apartment was burglarized and suggesting that the phone was stolen at that time. However, he clearly possessed the phone when he used it to call 911 a short time after the burglary and when [] Harrison called him to arrange to pick him up to go to Arooga's.

> [Bailey]'s phone was able to provide a thorough timeline of his whereabouts on the night of the murders. The following relevant times and locations of [Bailey]'s phone were established at trial:

>> a) 5:51 p.m. - in vicinity of [Bailey]'s residence at 3 North 16th Street[;]

>> b) 5:55 p.m. - in vicinity of City Gas and Diesel approximately one [] minute before [Bailey]'s 911 call[;]

>> c) 12:30 a.m. - down the street from Arooga's[;]

d) 12:39 a.m. - .34 miles south of Arooga's, presumably when [Bailey] left with Harrison's Range Rover[;]

e) 12:42 a.m. — in the Allison Hill area of Harrisburg, the general location of USA Fried Chicken and [Bailey]'s apartment[;]

f) 1:03 a.m. - phone moving towards area of 13th and Market Streets[;]

g) 1:33 a.m. - phone just south of USA Fried Chicken at approximate time of shooting[; and]

h) 1:39 a.m. - in vicinity of B & M Auto near 13th and Derry Streets.

Trial Court Opinion, 6/17/25, at 6-8 (citations omitted).

Specifically, the trial court found that the evidence demonstrated that the shooter was seen dropping a phone at the scene of the shooting, Bailey was seen wearing the same clothes in the City Gas and Diesel camera footage while making a phone call from the same phone number as the cellphone found at the scene, the cellphone was registered to Bailey, and that Bailey's inability to explain where his phone was, and insistence that it had been stolen during the burglary, despite overwhelming evidence to the contrary, demonstrated Bailey's consciousness of guilt. *Id.* at 10. Further, the testimony of both Harrison and Bechtold supports the inference that Bailey was in the same places where his phone was located. *See* N.T. Jury Trial, 11/1/24, at 123-26 (Bechtold testifying Bailey approached her and Quattlebaum at USA Fried Chicken at approximately 1:30 a.m.); *id.* at 161 (Harrison testifying that, on night of shooting, he was with Bailey at Arooga's). Thus, we agree with the trial court that the Commonwealth presented

sufficient evidence to connect the cellphone found at the scene with Bailey and, ultimately, to the identification of Bailey as the shooter. **See Eckrote**, **supra**. Consequently, we afford Bailey no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/16/2026